HENRY A. FOSTER, Admr.

*v.*

THE CITY OF CHICAGO.

*Opinion filed June 19, 1902.*

1. INDEPENDENT CONTRACTORS—*difference between independent contractor and a servant is determined from whole contract.* The difference between an independent contractor and a mere servant is not determined solely by the retention of a certain kind or degree of supervision by the employer, but from the contract as a whole, and not by the phraseology of a single sentence or paragraph.

2. SAME—*when builder of sewer is an independent contractor.* A contractor engaged in building a sewer under a written contract with a city is an independent contractor as respects the men in his employ, notwithstanding the contract provides that the work shall be performed "under the immediate direction and superintendence of the commissioner of public works, and to his entire satisfaction, approval and acceptance."

3. SAME—*when city is not liable for death of an employee of sewer contractor.* Failure of a sewer contractor to observe a specification in the contract requiring the sides of the ditch, when necessary, "to be effectually supported with suitable planks and timbers by the contractor, without expense to the city," does not render the city liable for the death of an employee of the contractor, killed in consequence of such failure.

*Foster v. City of Chicago,* 96 Ill. App. 4, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

The following is a statement of the facts of this case, as made by the Appellate Court:

"This is an action by the administrator of the estate of one John Shea, to recover, under the statute, damages to the next of kin for alleged negligence of defendant causing the death of the intestate. At the close of all the evidence the court instructed the jury to find the defendant not guilty.

"The deceased was killed by the caving in of the side of an excavation in a public alley of the city of Chicago

in which he was employed upon the construction of a sewer. A ditch had been excavated to the depth of about fourteen and a half feet, the sides having a slope of about a foot. The embankment was supposed to be protected by boards which were, it is said, about an inch in thickness and ten inches wide, placed perpendicularly, about four feet apart and reaching within three or four feet of the bottom of the excavation. They were held in place by a line of stringers on each side of the ditch, which were kept in position by braces reaching across between them, placed at intervals of six or seven feet. The sheeting had no support below the stringers, a distance of over ten feet, to the bottom. The deceased was killed by the caving in of the east side of the excavation for a distance extending about twenty-five feet lengthwise of the sewer. He was at work at the bottom of the ditch, near the center of the caving portion, and was covered by the falling sand, causing his death.

"There was a contract for the construction of the sewer made by the city of Chicago with one John Sheehy, who, together with one Barney Ryan, was originally joined with the city as party defendant. Subsequently, however, a non-suit was entered as to Sheehy and Ryan and the trial proceeded as against the city alone. The contract is dated April 4, 1895, and by its terms the contractor, John Sheehy, agreed to furnish all labor and material and do all work necessary to fully complete the sewer. It is provided that all material and the time and 'manner' of doing the work 'must be in every respect satisfactory to the commissioner of public works;' also, that 'the whole of the work shall be commenced and carried on when and where the commissioner of public works shall direct;' and the contractor 'agrees to perform all of said work under the immediate direction and superintendence of the commissioner of public works of the city of Chicago, and to his entire satisfaction, approval and acceptance.' The specifications require 'that in case the

depth of the excavation or the character of the ground renders it necessary to secure the protection of the workmen, the sides of the trench are to be effectually supported with suitable planks and timbers by the contractor, without expense to the city.'"

Appellant's motion for a new trial was overruled by the trial court, and judgment was entered against him for costs. Appellant then took an appeal to the Appellate Court. The Appellate Court has affirmed the judgment of the circuit court, and granted a certificate of importance. The present appeal is prosecuted from such judgment of affirmance.

W. P. BLACK, and H. R. RATHBONE, for appellant.

ANDREW J. RYAN, and JOHN E. KEHOE, (CHARLES HORGAN, of counsel,) for appellee.

Per CURIAM: In deciding the case the Appellate Court delivered the following opinion:

"It is sought to hold the city liable for the injury upon the ground, as stated by appellant's attorneys, that under the law and by the terms of this contract the burden rested upon the city to see that the work was 'safely and properly done;' that the city assumed the responsibility because it 'remained in a position of control' over the work and the improvement. The defense of the city is, that the work was done under a written contract by an independent contractor, for whose negligence it cannot be held liable.

"It is urged in behalf of appellant that while it may be that an owner of property who has by his contract for an improvement turned over to the contractor absolute control of the property, reserving to himself no supervisory power, would not, in such case, be liable for any injury resulting from the negligence of the contractor, yet it is otherwise in the case of an improvement by a city; that a city, in the exercise of its franchises, assumes

a duty as to work of this character which it cannot devolve upon a contractor and a liability for which it will be strictly held. The general rule is stated by Bishop on Non-Contract Law, (sec. 602,) to be, that 'a contractor who simply undertakes to bring about a result after his own methods is not a servant' of his employer, and the latter is not liable for such contractor's negligence, while, on the other hand, one 'who, though he is to have a stipulated price for a thing, executes it under the direction and superintendence of the employer' is a servant, and the employer is liable to third persons injured by the negligence of such a servant. The liability of the city therefore depends mainly upon the contract,—whether or not, by the written agreement, the work in doing which appellant's intestate lost his life was done under the direction and superintendence of the city, in such sense as to make the latter liable.

"It is true that the contractor agreed to perform all the work 'under the immediate direction and superintendence of the commissioner of public works, and to his entire satisfaction, approval and acceptance;' but the work he agrees so to perform is that prescribed in the contract, and it is evident, we think, that this direction and superintendence relate to results,—to the character of the workmanship,—and not to methods, unless by the use of improper methods the character of the workmanship was rendered unsatisfactory. The requirement that the time and manner of doing the work must be satisfactory to the city's commissioner of public works does not include the means employed and is limited by the provisions of the contract. The direction and superintendence provided for do not relieve the contractor of responsibility nor permit the city to change or modify the terms of the written instrument. The contractor agrees to do all work necessary to fully complete the sewer in the manner required by the contract, as well as in a manner satisfactory to the city. Provided he reaches a satisfac-

tory result in building such a sewer as the contract calls for, the contractor is not prevented from using his own methods. The specifications require the sides of a trench like that where the caving occurred, 'to be effectually supported with suitable planks and timbers by the contractor, without expense to the city.' The method of using such planks and timbers for such purpose is left to the contractor. The contract does not include the direction, management and control by the city of every detail of the work. The contractor was not required to take his orders, day by day, from the city. He was to be guided by the contract, and the specifications constituting a part thereof. He was not a mere servant and employee. He was an independent contractor, the city retaining such supervisory power as it might, from time to time, find it necessary to exercise to insure compliance with the contract and to obtain the result called for thereby. The contractor employed and paid his own laborers. The deceased was his employee. The difference between an independent contractor and a mere servant is not determined solely by the retention of a certain kind or degree of supervision by the employer. It is to be determined by the contract as a whole,—by its spirit and essence,—and not by the phraseology of a single sentence or paragraph. Being a contractor, and not a mere servant of the city, the latter cannot be held liable for his negligence in the performance of his work. *Hale* v. *Johnson*, 80 Ill. 185; *Prairie State Loan and Trust Co.* v. *Doig*, 70 id. 52. See, also, *West* v. *St. Louis, Vandalia and Terre Haute Railroad Co.* 63 Ill. 545.

"This is not a case where a party, when passing along or using a public street, has been injured because of the negligence of the city in permitting or causing a sewer to be constructed or other work to be carried on in such street, creating a danger to passers-by, for which proper safeguards have been negligently omitted. In *City of Springfield* v. *LeClaire*, 49 Ill. 476, cited by the appellant's

counsel, the question was whether there was a duty resting upon the city growing out of the franchise conferred upon it to keep its public streets in a safe condition for the passage of travelers and others having occasion to use them, and the question was properly answered in the affirmative. But the deceased in the case before us was not a passenger or a traveler over the street when injured, and there is no analogy between the case so cited, or others of like character referred to by appellant's attorneys, and the circumstances of the case at bar. It is, doubtless, not in the power of the city to delegate the care of its streets to a contractor, and by so doing relieve itself of the responsibility for their safety and convenience. If the deceased had been injured while using a street as a passer-by thereon, in consequence of this sewer excavation not having been properly protected or supported, the city could not have relieved itself of liability for its own negligence in those respects because the contractor had failed to do his duty. In the case of *City of Chicago* v. *Joney*, 60 Ill. 383, cited in behalf of appellant, it was found by the court that there 'was dependence,—subserviency,—in the contractors, and for their negligence the doctrine of *respondeat superior* must apply.' In *City of Chicago* v. *Dermody*, 61 Ill. 431, it was found that by the statute then in force, as well as by ordinance, the board of public works was required to take charge of the work, and it was their duty to see that it was performed according to the plans and specifications, the deviation from which caused the injury complained of, and the same doctrine was applicable. Neither of these cases is in point in the present discussion.

"It is urged that it was for the jury to determine, as a question of fact, whether, under the contract, the city was responsible for the contractor's negligence. The construction of the contract is for the court, and if the city is found, as it was by the trial court, not to be so responsible, the contractor was not to be regarded as its

agent, and evidence concerning his negligence was not material against the city.

"We find no error in the judgment of the circuit court, and it must be affirmed."

We concur in the foregoing views expressed by the Appellate Court, and in the conclusion reached by it.

Accordingly, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*