GRANT TEETERS, Appellant, v. CITY OF DES MOINES, Appellee.

MUNICIPAL CORPORATIONS: Negligence—Independent Contractorship Created by Statute—Non-Liability of Municipality. A municipality is not liable for the negligence of an independent contractor in doing work not intrinsically dangerous. So *held* where the status of the contractor was one created by statute, or at least by the construction placed on the statute.

PRINCIPLE APPLIED: Sec. 1530, Code Sup., 1907, commanded that certain road taxes in the possession of the county be expended on the roads within or adjacent to the city where the tax was raised, the expenditure to be "under the direction of the city council". The city directed the county to expend the tax in grading a certain street at a certain place, "work to be done under the direction of the board of public works" of the city. The city and the county appear to have construed the statute as commanding the county to actually do the work, with the right in the city to direct the place and the general result to be accomplished. The city set the grade stakes and, through its street commissioner, went upon the work at times to see that the work was done. The city employed no help, nor did it direct any of the employees as to the particular way in which the work should be done. The county proceeded to do the work solely with its own employees, and in its own way. Plaintiff was injured in the progress of the work. *Held*, the county occupied the relation of an independent contractor to the city, and the city was not liable for the injury.

*Appeal from Polk District Court.*—CHARLES A. DUDLEY, Judge.

MONDAY, OCTOBER 4, 1915.

REHEARING DENIED FRIDAY, JANUARY 14, 1916.

ACTION to recover damages for personal injury. There was a directed verdict for the defendant. Plaintiff appeals.—*Affirmed.*

*A. D. Pugh*, for appellant.

*Robert Brennan, H. W. Byers* and *Eskil C. Carlson*, for appellee.

PRESTON, J.—1. Counsel for plaintiff fairly states the issues and plaintiff's claim as follows: Plaintiff alleged that, on April 23, 1906, the defendant, by resolution duly passed by its council, directed that the board of super-

MUNICIPAL CORPORATIONS: negligence: independent contractorship created by statute: non-liability of municipality.

visors of Polk County be instructed to expend the sum of $400 from the county road fund in grading Beaver Avenue in said city from the end of the paving to Kimball Corners, "work to be done under the direction of the board of public works"; that, pursuant to said resolution, said grading was done under the direction of the city council of said city, and was paid for out of that portion of the county road fund arising from property within said city, as provided by Section 1530 of the Code and Supplement; that plaintiff was employed in the execution of said grading to haul dirt with a team and wagon, and was paid for said labor from that part of the county road fund arising from property within said city (it is plaintiff's claim that, in thus employing plaintiff and in doing the work, the board of supervisors was the agent of defendant city); that one Frank T. Morris, a member of said board of supervisors, acted for the defendant city in hiring and paying plaintiff for said labor; that said grading consisted in part in widening a fill on Beaver Avenue immediately north of the intersection of said avenue with Clark Street, in said city, by extending a line of dirt along the west side of said fill from north to south; that said dirt was hauled in wagons from a cut north of said fill, and dumped and shoveled over the west side of said fill; that one J. J. Jackson was employed by the city as general foreman on said work and one Ed Kelly was employed by said city as dump boss or dump foreman on said work; that, on July 10, 1907 (plaintiff being then 16 years old), immediately after a rain in the afternoon, said Jackson negligently ordered plaintiff to resume work too soon after said rain, when the dump and road were soft and slippery; and that said Kelly negligently ordered plaintiff to drive so far over the west side of said dump that the dirt

gave way under his west wheels and caused his wagon and team to overturn on top of plaintiff and roll down said fill, which was about 30 feet high at said place, breaking plaintiff's right leg in three places and injuring him internally in his back and chest, and causing great pain and suffering and permanent and total disability for life; and that, by reason of said negligence, plaintiff has been damaged in the sum of $25,000.00; and that plaintiff was not negligent; that plaintiff did not know of the unsafe condition of the place where his wagon overturned; that said place was in charge of said dump boss, Kelly, who had preceded plaintiff to said place.

The defendant answered said petition, admitting the corporate character of the defendant as alleged; and alleged that, if plaintiff was injured as he alleged, said injuries were due to his own negligence causing or contributing thereto; denied that defendant was guilty of any act of negligence causing or contributing to plaintiff's alleged injuries; denied indebtedness to plaintiff; and denied each and every other allegation in said petition contained.

The grounds of defendant's motion to direct a verdict are, substantially, that the evidence fails to show any negligence on the part of the city or its officers; that all the defendant did was in the exercise of its governmental powers, for the negligent exercise of which defendant is not liable, because the resolution of the city council directing the board of supervisors to improve Beaver Avenue and to expend the revenues of the county road fund was the exercise of purely governmental powers; that plaintiff was not an employe of the defendant city at the time he was injured, and the evidence fails to show the relation of master and servant as between plaintiff and defendant; because the evidence shows that the work upon which plaintiff was engaged was being performed by an independent governmental agency over which defendant had no control and for whose negligence the city is not responsible; because the undisputed evidence shows that plaintiff was an employee of Polk County; because plaintiff was employed

and performing work pursuant to laws of the state by and through a governmental agency and in the exercise of a governmental function; because plaintiff was guilty of contributory negligence; the negligence of defendant was not the proximate cause of the injury; because plaintiff assumed the risk; because plaintiff was injured by the negligence of a fellow servant; because the work being prosecuted was under the exclusive control of Polk County, with which defendant city had nothing to do, except to direct where the work should be done, as provided by Section 1530 of the statute, and because the city had no control over the workmen employed in performing said work. Appellant's assignment of errors covers these different points raised by the motion to direct.

As we understand it, the trial court based its ruling on the ground, mainly, that the board of supervisors was not the agent of the city, but an independent contractor, for whose acts, by itself or agents, the city was not liable. The views of the trial court are reflected by its opinion, which appears in the record, the substance of which is:

"In passing upon the motion, which has been argued at length, and very ably, I shall only consider that which inheres in and is predicated upon Section 1530 of the Supplement. That section is as follows:

" 'The board of supervisors of each county shall, at the time of levying taxes for other purposes, levy a tax of not more than one mill on the dollar of the assessed value of the taxable property in its county, including all taxable property in cities and incorporated towns, which shall be collected at the same time and in the same manner as other taxes, and be known as the county road fund, and paid out only on the order of the board for the purchase of road tools or machinery or for work done on the roads of the county in such places as it shall determine. Provided that on written petition of a majority of the electors who are freeholders of any township in any county, the board of supervisors may levy an additional mill in said township, to be expended by said board of supervisors

on roads in township where same is levied; but so much of the county road fund as arises from property within any city or incorporated town, except such pro rata share as may have been expended by the board for the purchase of road tools or machinery, shall be expended on the roads or streets within such city or town, or on the roads adjacent thereto, under the direction of the city or town council; and the county treasurer shall receive the same compensation for collecting this tax as he does for collecting corporation taxes. Moneys so collected shall not be transferable to any other fund nor used for any other purpose.'

''There is another portion of the section which I need not read, because it does not pertain to this question. Now the material portions of this section are included in what I first read, omitting the provision for the levy of an additional mill upon said township.

''Pursuant to this statute, this county road fund was levied and collected for the year involved in this transaction. On April 23, 1906, the city council of the defendant passed the following resolution: 'No. 315. Be it resolved by the city council of the city of Des Moines: That the board of supervisors be instructed to expend the sum of $400 from the county road fund in grading Beaver Avenue from the end of the pavement to Kimball corners. Also grade Beaver Avenue from Forest Avenue to University Avenue; work to be done under the direction of the board of public works.' And then follows the vote by which that resolution was adopted. In other words, we have a resolution here which is in exact accord with the provisions of the statute passed by the city council directing the board of public works of the city of Des Moines, which was then an administrative office, as distinguished from the governmental offices of the city council of the city of Des Moines. Pursuant to that resolution, the board of supervisors in its own way and using its own employees undertook to make the fill or do the grading as indicated in the resolution. For the purposes of this case, it is established that the city council

determined the place where this work should be done, and also set the grade stakes. Whether it was more than a practical grade or not is, I think, entirely immaterial; but at least the city council did set these stakes. The statute provides, I think, in terms, that the board shall expend this money. Now we do not have to deal with what might have taken place under other circumstances, but we simply have to deal in this case with the facts which are disclosed in evidence, and they are these, and about which there is no dispute. As I said before, the board of supervisors of this county did this work. It employed its own tools and it employed the men to do the work, and they were under the immediate direction and supervision of the officials of the county, to wit, Mr. Frank T. Morris, then a member of the board of supervisors, and the foreman of the work, Mr. J. J. Jackson, and the dump foreman on the job were all of them the employees of the county. Then so far as the work is concerned, the administrative part of the work was performed by the county, without any interference or without any direction whatsoever upon the part of the defendant city or any of its officers. It is true that the grade stakes—that is, the place where the work was to be done—was indicated and fixed by the council; and it is also true that the road or street commissioner did go upon the work at different times and see that the work was done. It is not in evidence that anyone representing the city at any time directly or indirectly undertook to employ any help to control any help, or direct any of the administrative part of that work.

"Then we come to this question, as to whether or not, this accident having occurred—a lamentable affair which we must all concede and one which calls for the keenest and deepest sympathy for the plaintiff under the present circumstances— whether the city is liable. The liability of any other party is not under consideration and no opinion is to be expressed in regard to that point. It is claimed in the petition that the county was the agent or servant of the defendant city. Of

course, agency is the result of a contractual obligation, either by a contract express or implied, and it is sometimes a little difficult to determine just where the line begins and ends between a servant and an agent. In fact, one of our judges in discussing that question, speaks of the employment of the agent and the servant being the same, only a little different in degree. Now the cardinal question is, Was the county the servant or the agent' of the defendant city? As I have pointed out, the only thing which was done in this manner was simply to direct, as this resolution states, the place where this work was to be done. Now I cannot find in that that there is the relation of principal and agent or servant for this, that the board of supervisors is an independent governmental agency and was doing this work as it saw fit, so far as any interference is concerned upon the part of the city. The only control over the county was this, and that is no control—simply a direction to the county to expend this road fund at a particular place which was pointed out by the city. Now, it seems to me that the evidence which makes the city the employer and the board of supervisors the employee is wanting in this case, and that those rules cannot apply thereto. That is put by the pleader, I think not without some thought upon his part, because he evidently wanted to avoid the contention that these parties—that is, the county and the city was an independent contractor. It seems to me, as I have studied this and reflected upon it, though not at all in accord with the contention of the city that this was simply the discharge of a governmental duty, something under the police powers of the city for which there would be no liability, that the parallel is more nearly correct when we say that these two parties were independent contractors. The county was continually present in the doing of this work by its employees and by its highest representative, one of the board of supervisors, giving directions—in fact was on the work within a few hours before it happened.

"Now it was held in the case of *Foster v. City of Chicago*

that, where a contractor was employed, and whose contract required him to furnish all labor and material, and provided that the material and the time and manner of doing the work should be satisfactory to the commissioner of public works, and that it should be done under the immediate direction and supervision of the commissioner, that it was a case of an independent contractor, and that for an accident which occurred while the contractor was performing that work, the city or principal in the case was not liable. 64 N. E. 322, 323 (197 Ill. 264). I do not care to 'further discuss that, except I find a similar case in the state of Missouri, wherein it is stated as follows: 'That a right to annul or suspend the contract and an obligation on the contractor to discharge workmen disobeying a city officer will not constitute the contractor the agent of the city so as to make it liable for injuries sustained by an individual by the negligent prosecution of the work, as by careless blasting.' That is a decision from the Supreme Court of the state of Missouri.

"So, taking the facts as they are in this case, I do not find that the work was done under such conditions as that the city under this statute is liable. I do not want to be understood as saying that there might not be conditions under which the city would be liable, but I am speaking now of this statute as applied to the facts in this case. The motion will have to be sustained."

Plaintiff was injured on July 10, 1907. The action was first commenced in April, 1909, and the cause was tried in October, 1913. There have been some changes in Section 1530 of the Code since plaintiff's injury, and we have to do with the statute as it then existed. The case turns largely upon the interpretation of the statute as applied to the facts in this case, and upon the question as to whether the board of supervisors was the agent of the defendant city.

The evidence sustains the conclusions of the trial court as to the facts. We are of opinion that the trial court correctly construed the statute and properly directed a verdict

for defendant. It must be admitted that the statute was, at that time, incomplete. It could have been executed either way, by the city or by the board of supervisors. If the city had undertaken to do this work, a different question would be presented. If the money had been paid to the city, it could spend it. The difficulty with plaintiff's case is that the county was expending the tax by doing the work desired with the permission of the defendant city. Plaintiff was not in the employ of the city, but was employed by the county at this or any other work to which the county should put the group of men with whom he was working. The city did not have a thing to do with it, either on its own account or as principal for the board of supervisors. Suppose one of this group of men had been an incompetent employee, and because of his known recklessness or incompetence, likely to injure his co-employees, for which the employer would be liable. The county alone had the means to protect itself by discharging such incompetent. The city had nothing to do with the employment of any of these men in the first instance, and had no authority to discharge any of them. This work was being done by the county for the benefit of the city. Under the statute, it is or may be done, and was so done in this case, by the county, under the direction of the city council; that is, the city may direct where the work shall be done and the character of the work it desires, either within the city or on the roads adjacent thereto. It is not an answer to this point, we think, for plaintiff to say that other provisions of the statute give cities power to establish, control, and grade streets, appoint street commissioners, and prescribe their duties and the like. Here we have a specific statute authorizing the board of supervisors to levy a tax for a road fund to be expended for the benefit of both the county and the city, and providing how the fund shall be expended or used. That part of the public living outside the city is, to some extent, interested in the roads or streets within the city, because such streets are used by the outside residents of the county. The city is also interested in the

roads outside the city limits but adjacent to the city. The tax is levied upon the property of both residents and non-residents.

By this statute, it is provided that the money shall be expended on the roads adjacent to, as well as within, the city, and under it the city may direct what work shall be done and where, even outside the city, if adjacent thereto. In this case, suppose plaintiff, at the time he was hurt, had been working on a county road outside the city of Des Moines, and the city had directed what work it desired done there, could it be claimed that the city would be liable or that the county was the agent of the city in such sense as that the city would be liable for the negligent acts of the board of supervisors, simply because the work was under the control of the city in the sense that it had designated the character of work and the place where it was to be done? We think not. The city could have no other control over the county roads outside the city limits. The fact that the accident happened in the city does not change the situation under this statute. The case of *Foster v. Chicago,* 197 Ill. 264, in 64 N. E. 322, *supra,* cited by the trial court, is somewhat similar in its facts to the instant case. In that case, deceased was working for a contractor who had contracted to construct sewers in an alley in the city. Deceased was in the employ of the contractor and was killed by the caving in of the side of an excavation in a public alley of the city in which he was employed upon the construction of a sewer. The contract between the city of Chicago and the contractor provided:

"That all material and the time and 'manner' of doing the work 'must be in every respect satisfactory to the commissioner of public works'; also, that 'the whole work shall be commenced and carried on when and where the commissioner of public works shall direct'; and the contractor 'agrees to perform all of said work under the immediate direction and superintendence of the commissioner of public works of the city of Chicago and to his entire satisfaction, approval and

acceptance'. . . . The sides of trenches are to be effectually supported with suitable planks and timbers by the contractor, without expense to the city.''

It was for neglect in this respect that the administrator made his claim. The court said (197 Ill. 264, 268):

''The contract does not include the direction, management and control by the city of every detail of the work. The contractor was not required to take his orders, day by day, from the city. He was to be guided by the contract, and the specifications constituting a part thereof. He was not a mere servant and employee. He was an independent contractor; the city retaining such supervisory power as it might, from time to time, find it necessary to exercise to insure compliance with the contract and to obtain the result called for thereby. The contractor employed and paid his own laborers. The deceased was his employee. The difference between an independent contractor and a mere servant is not determined solely by the retention of a certain kind or degree of supervision by the employer. It is to be determined by the contract as a whole,—by its spirit and essence,—and not by the phraseology of a single sentence or paragraph. Being a contractor and not a mere servant of the city, the latter cannot be held liable for his negligence in the performance of his work.''

That case is cited with approval by the Supreme Court of Missouri in *Salmon v. Kansas City,* 241 Mo. 14 (145 S. W. 16).

The doctrine that no liability exists when work is done by an independent contractor applies to municipalities. See *Bennett v. Inc. Town of Mt. Vernon,* 124 Ia. 537; *Uppington v. City of New York,* 53 L. R. A. 550, 552. Other questions are argued by counsel for either side, but we think those we have discussed decide the case.

The judgment is therefore—*Affirmed.*

Evans, C. J., Deemer and Weaver, JJ., concur.