Garrett v. Beers.

---

No. 19,912.

CORA GARRETT AND JAMES GARRETT, *Appellees*, v. H. M. BEERS, *Appellant.*

SYLLABUS BY THE COURT.

1. CHANGE OF WATERCOURSE—*Damages—Proper Party Plaintiff.* Where a plaintiff has acquired a town lot and has entered into possession under a contract of purchase, he is the owner of it so far as concerns his right to maintain an action for damages to the property.

2. EXTRAORDINARY FLOODS—*Damages—"Act of God."* An "act of God" as known in the law is an irresistible superhuman cause, such as no reasonable human foresight, prudence, diligence and care can anticipate and prevent.

3. SAME—*Heavy and Protracted Rains—Not within Definition of "Act of God."* A flood caused by a heavy and protracted rain no greater than had fallen "many a time before" within the duration of a man's experience is not such "an act of God" as will excuse one who changes the natural course of a stream into a new channel which is inadequate to carry off its waters without damage to neighboring property.

4. TITLE—*In Name of Wife—Husband Liable for Changing Watercourse.* Although the title to property may be vested in a wife, her husband may subject himself to liability as its owner by acts of dominion and control over it.

5. SAME—*Acts Rendering Husband Liable for Changing Watercourse.* Where a husband's business firm contributed a large sum of money towards the purchase of a tract of land and the husband joined in platting it as a city addition, paid the taxes from year to year, changed the course of a stream which flowed through it, advertised lots in the addition, sold such lots and received payments therefor and gave receipts in his own name, he may be liable as owner for the negligent manner of changing the stream and its consequences although the title to the property was taken and held in the name of his wife.

6. CHANGING WATERCOURSE—*Liability for Damages.* Where for his own purposes the owner of land changes the course of a stream, he must use due care to provide the stream with a new channel of sufficient capacity to carry off not only the ordinary flow of water but also such high waters as may reasonably be anticipated from heavy and protracted rains and which the old channel was capable of carrying away without damage to neighboring property.

Appeal from Wyandotte district court, division No. 2; FRANK D. HUTCHINGS, judge. Opinion filed February 12, 1916. Affirmed.

*T. F. Railsback*, of Kansas City, and *Glenn R. Donaldson*, of Kansas City, Mo., for the appellant.

*David F. Carson*, *Claude L. Peterson*, and *William Drennan*, all of Kansas City, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The appellees brought this action in the district court of Wyandotte county against the appellant, in which they alleged their ownership of a certain lot in a suburb of Kansas City; that the defendant for long prior to May, 1910, had owned certain lands known as Spring Valley Addition adjacent thereto on the west; that prior to May, 1910, there was a run-

Garrett v. Beers.

ning stream which flowed through the defendant's lands and along the west side of the plaintiffs' lot; that the defendant carelessly and negligently filled up the channel of the stream so that it flowed directly east to plaintiffs' lot and away from its natural channel, and that in May, 1910, the waters of the stream flowed over the plaintiffs' lot and damaged their building, fences, household goods and clothing to the extent of $400, and permanently depreciated their property in the sum of $600. They asked judgment for $1000.

Defendant's answer was a general denial. The jury made special findings of fact, and awarded damages to plaintiffs in the sum of $475. The court overruled defendant's motion for a new trial upon condition that the plaintiffs would remit $200 on the verdict. This the plaintiffs did; and judgment was rendered against defendant accordingly.

The defendant appeals and assigns error: (1) in overruling defendant's demurrer to the evidence; (2) in refusing certain instructions; (3) in overruling defendant's motion for judgment; and (4) in refusing judgment on the special findings.

1. It is urged that the demurrer should have been sustained because the plaintiffs were not the owners of the property. There can be no cavil about their ownership of the household goods and clothing. Touching their ownership of the realty, it was shown that the plaintiffs had bought the land and entered into possession under a contract of purchase in 1907, although they did not receive a warranty deed to the realty until October, 1910, some months after the damages alleged. Ordinarily one who buys real estate and enters into possession under a contract of purchase is the owner of it against all comers, excepting possibly the vendor holding the legal title, and may maintain an action as owner for damages to the property. (Civ. Code, § 25; *St. L. L. & D. Rld. Co. v. Wilder*, 17 Kan. 239, syl. ¶ 6; *Mooney v. Olsen*, 21 Kan. 691; *Burke v. Johnson*, 37 Kan. 337, 15 Pac. 204; *Goodrich v. Comm'rs of Atchison Co.*, 47 Kan. 355, 361, 27 Pac. 1006; *Christy v. Richolson*, 48 Kan. 177, 29 Pac. 398; *Mulvane v. Lumber Co.*, 56 Kan. 675, 44 Pac. 613; *Steele v. Dye*, 81 Kan. 286, 290, 105 Pac. 700; *Banchor v. Proctor*, 88 Kan. 510, 129 Pac. 526; 25 Cyc. 1549; 6 Words and Phrases, p. 5134.)

Defendant also contends that the waters which flooded plaintiffs' property constituted "an act of God." An "act of God" as known in the law is an irresistible superhuman cause such as no ordinary or reasonable human foresight, prudence, diligence and care could have anticipated and prevented. (1 Cyc. 758.) It is usually applied to convulsions of nature, like earthquakes, unprecedented floods, violent winds, tempests and droughts. (1 Bouvier's Law Dict., Rawle's Revision, p. 79.) There was testimony that the May flood in 1910 which caused the damage was not unprecedented; that "many a time" such heavy rains had fallen before. Clearly this was a question for the jury. The court's instructions fully covered the point and the demurrer was properly overruled.

2. It is next urged that defendant was entitled to a peremptory instruction that the jury should return a verdict in his favor, on the ground that he was not the owner of the property upon which the new channel was dug and which carried the flood waters on to plaintiffs' lot and destroyed their property. While the fee was held by the defendant's wife, much of the evidence tended to show that his business firm advanced a large sum of money for its purchase, that he had caused the change to be made in the channel of the stream, that he participated in platting the land, that he paid the taxes, advertised the platted lots for sale, sold lots, received payments and gave receipts in payment for lots, directed workmen in filling the old channel and in making the new channel. The defendant's ownership could not have been settled by a peremptory instruction to the jury under this state of the evidence.

3. Nor can it be doubted that plaintiffs sufficiently alleged and that their evidence tended to prove actionable negligence. If the new channel had been adequate to carry the flood waters, plaintiffs would not have been damaged. As the old channel flowed, their property, real and personal, would have been above, or chiefly above, the point where the waters left defendant's land. There was some evidence that the flood waters which did the damage came from another direction and not from defendant's land. That was only a question for the jury.

4. But it is said that the jury found specially that the waters which did the damage were flood waters. But as the

flood waters were wont to flow before defendant changed the channel, they could do no damage to plaintiffs. When he changed the channel he should have taken into account the capacity needed to carry off the probable volume of waters in a freshet. This, according to some of the testimony, he did not do. Nor can it be fairly said that the water was all surface water. Some of the evidence showed that the old channel, colloquially known as the "Sea Serpent," was a living stream with natural springs in its course, and that men brought their horses there for water. (*Rait v. Furrow*, 74 Kan. 101, 85 Pac. 934; *Manufacturing Co. v. Bridge Co.*, 81 Kan. 616, 106 Pac. 1034; *Roland v. Railway Co.*, 82 Kan. 546, 108 Pac. 808.)

Objection is made that the evidence did not warrant the jury's special finding that the defendant was the "joint owner" of the property. No hypercritical interpretation should be given to this language. Obviously the jury sought for a practical term to characterize the defendant's ownership or interest in the property, taking into account the fact that the fee was vested in his wife and that under the evidence and the court's instructions the defendant also had such interest in and dominion over the property as to rise to the dignity of ownership.

Reviewing this case in full, it appears that it presents no legal difficulties whatsoever. It was a case which turned largely upon facts which had to be sifted from conflicting testimony; and since the result is practically free from such errors as would warrant the interference of an appellate court, the judgment must be affirmed.