No. 20,635.

C. G. DAVIS, *Appellee,* v. COLER L. SIM et al., *Appellants.*

### SYLLABUS BY THE COURT.

1. POSSESSION OF REAL ESTATE—*Claim of Ownership—Action for Damages.* Rule followed that possession of property under claim of ownership is sufficient title to maintain an action against a wrongdoer for damages to the property.

2. NEGLIGENCE—*Defective Dam—Flooding Lands—Holder of Equitable Title Entitled to Damages.* Where a corporation has been informally abandoned or dissolved and the rights of creditors protected and the corporate property apportioned and allotted to the shareholders, and the corporation authorizes the execution and delivery of instruments conveying the property in accordance therewith, an allottee who had taken possession pursuant thereto may maintain an action for damages to the property thus apportioned to him, although he did not receive formal conveyance of title until after his cause of action for damages accrued.

3. EVIDENCE — *Transactions with Deceased Persons.* Where the civil code (§ 320) forbids parol evidence of transactions with deceased persons, proof of such transactions need not fail but may be established by circumstantial or other competent evidence.

4. DISSOLUTION OF CORPORATION—*Distribution of Assets—Holder of Equitable Title to Land Entitled to Damages for Flooding the Same.* A father, mother and their two sons were the directors of a corporation and the exclusive shareholders of its stock. The minutes of their corporation records show that they determined to wind up the corporate business, arrange for the payment of its debts, and apportion the corporate property. One son was allotted one hundred and twenty acres of the corporate property and entered into possession. The father, mother and the second son were jointly allotted the remaining three-fourths of the property, and the father, as president of the corporation, was authorized to execute deeds accordingly and to convey the interest of himself, his wife and the second son to "such party or parties as they shall respectively designate." The minutes of later meetings, participated in by the father, mother and second son, show that they had determined to have their three-fourths of the corporate property conveyed to the son and he had taken possession pursuant thereto. Before formal execution of such conveyance the property was damaged by a flood caused by the breaking of a dam negligently constructed. *Held,* that the son, thus in possession under claim of ownership, and in equitable ownership in fact, can maintain an action for damages to the property.

5. NEGLIGENCE—*Insufficient Dam—Flooding of Land—Damages—No Variance between Pleading and Proof.* In an action for damages caused

Davis v. Sim.

by the breaking of a dam which damaged a farm and destroyed farm property, where it was charged that the dam was negligently constructed and insufficient to sustain the pressure of the waters impounded by it, it is not a material variance that the proof showed and the jury found that the water flowed over the dam, softening and disintegrating it, before it gave way and released the waters which did the damage.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed March 10, 1917. Affirmed.

*Kos Harris, V. Harris, H. C. Sluss, S. B. Amidon, D. M. Dale,* and *S. A. Buckland,* all of Wichita, for the appellants.

*Fred Stanley, Claude C. Stanley,* and *Benjamin F. Hegler,* all of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff recovered judgment for damages to his farm and for loss and damage to his personal property caused by the breaking of a dam belonging to defendants and the consequent releasing of a large volume of water which flooded his property on May 31, 1908. For some years prior thereto the defendants had maintained a dam across Clear creek in Afton township, Sedgwick county, about four miles northwest of plaintiff's farm. The dam was about three hundred feet long, fifty-seven feet wide at the bottom, and eight feet wide at the top. At full capacity the estimated volume of waters impounded by the dam was about six and a half million cubic feet. There was an unusual and extraordinary rainstorm on May 31, 1908, and sometime in the afternoon the water rose above the level of the dam and began to flow over and around it. This caused the earth embankment, of which the dam was largely composed, to soften and disintergrate, and a large section of it suddenly gave way, and the water went out with a rush, and following the general course of the creek it swept over a large part of plaintiff's farm and drowned a large number of his brood sows, stock hogs and pigs, washed out a hundred acres of growing corn, destroyed sixty acres of alfalfa, destroyed and washed away his fences and creek crossings, damaged and destroyed his farming machinery, washed

away the surface soil of his farm and covered his fields with debris.

Plaintiff's petition alleged that the dam was negligently constructed and insufficient to hold back the accumulated waters.

"And plaintiff says that on the 31st day of May, 1908, it suddenly gave way and caused a great volume of water, which had been held above, to rush out suddenly and overflow the land along Clear Creek, southeast of said dam, and especially plaintiff's land, and that great quantities were precipitated upon plaintiff's land; and that said water swept away and destroyed the property of this plaintiff," etc.

Defendants answered with a general denial, and pleaded that the plaintiff was not the real party in interest, that on May 31, 1908, the plaintiff was not the owner of the farm, and not the owner of the personal property destroyed; and further pleaded that the damages occurred without defendants' fault but were occasioned by such an extraordinary and violent rain as no reasonable prudence could have anticipated.

The plaintiff prevailed; the court settled the question of ownership of the realty, and the jury made certain special findings:

"29. Do you find that the plaintiff was the owner of the personal property described in his petition on May 31, 1908? A. Yes.

"30. If you answer the foregoing question in the affirmative, state when and how he became the owner thereof. A. By mutual agreement between C. Wood Davis, Mary M. Davis and C. G. Davis, which transferred the title of the property to C. G. Davis on Feb. 23, 1907.

"16. Was not the storm of May 31st, 1908, an extraordinary storm which embraced in its sweep the towns of Garden Plain, Afton, Attica, and the vicinity between Goddard and Garden Plain and North and South thereof? A. Yes, but not any more extraordinary than had occurred at previous times.

"21. If the water above the dam in the lake or pond, when the same was full to the top of the dam, had all been taken out and spread over the Davis land of one hundred fifty acres, would it have covered it about twelve inches deep? A. Yes and more.

"34. Is it not a fact that a dirt dam, built strong enough to withhold all the water above it securely and safely will dissolve and crumble and melt down, when the water in the stream rises above and flows over the dam? A. Yes.

"35. Was not the breaking of the dam caused by the water in the stream or lake above it rising above and going over the dam and causing it to crumble? A. Yes.

"36. Would not the dam have withheld the water above it in the

Davis v. Sim.

stream, if the water had not risen above the dam, causing it to crumble and melt down? A. No.

"37. Was not the break in the dam that released and discharged the waters from the lake, caused by the water in the lake rising in the same from the flood waters of the afternoon on May 31, 1908, whereby the said waters were caused to, and did, run over the top of the dam and thereby caused the earth to crumble and melt the dam down at the place where said flood waters went over the same? A. It partially melted the dam and then suddenly gave way."

The defendants assign error: (a) the admission of incompetent testimony to prove plaintiff's ownership of the realty and personalty, and in the trial court's ruling on the demurrer thereto; and (b) the refusal of the trial court to give certain instructions based on the theory that the defendants' negligence in the construction of the dam and its consequent breaking were not proved strictly and precisely as pleaded.

Examining these in order, it developed that the plaintiff's father had originally owned the land damaged by the flood and that he had conveyed it and other lands to a family corporation consisting of himself, his wife and his two sons, one of whom was this plaintiff. In January, 1907, the members of the corporation met and decided to sell part of the property to satisfy certain mortgage indebtedness against it and to distribute the remainder among the shareholders. Pursuant thereto, on February 23, 1907, one hundred and twenty acres were set apart to plaintiff's brother, and the land in controversy was set apart to the plaintiff and to his father and mother jointly. Provision was made to execute deeds, satisfy debts, etc., and for the mortgaging separately of the interest allotted to plaintiff's brother, and of that allotted to plaintiff and his father and mother, and the president of the company, plaintiff's father, was authorized—

"To do any and all things which he shall deem necessary to secure the parties herein named in the peaceable possession of said tracts of land, and in the exercise of any and all legal rights to the use of said lands, and the rents, income and produce therefrom, or other legal rights, which said company possesses or may have possessed therein prior to the execution of the hereinbefore mentioned deeds of conveyance. Each of the hereinbefore named directors having voted for the above included resolutions, they were declared adopted."

The president was also authorized to execute conveyances to such parties, or to "such party or parties as they shall respectively designate."

So read the minutes of the corporation, duly signed by the president and secretary of the company and participated in by all the directors and all the stockholders of the company. A power of attorney was executed by the corporation and by each of its membership, naming W. E. Stanley and Kos Harris as attorneys in fact to sell some of the corporate property, and to execute a mortgage on the land allotted to plaintiff's brother, and to adjust the other business matters and concerns of the corporation and its members, to pay certain debts and to divide the personal property. The minutes of the corporation do not show, and the record evidence does not completely or accurately show, how the division of the property was carried out, except that plaintiff's brother took charge of the property allotted to him and moved a house thereto from other lands, as the corporation declared and as the minutes recited that he might do. In some informal way, not exactly disclosed because the father and mother had died before this trial and the plaintiff was not permitted to tell, under the rule forbidding parol evidence of transactions with deceased persons (Civ. Code, § 320), it was agreed between plaintiff's father, mother and himself that the lands and personal property allotted to them jointly should be conveyed to plaintiff. These agreements are acknowledged to have been in existence by the minutes of the corporation under dates of June 5, 1908, and June 18, 1908, and ratified therein. Plaintiff's father and mother participated in and sanctioned these proceedings. After this cause of action accrued, a formal deed of conveyance pursuant to such prior informal agreements, recited and recognized by the minutes of the corporation, was executed and delivered to the plaintiff.

It may be that the trial court permitted too wide a range of inquiry as to the status of plaintiff's title. Plaintiff was in possession under a claim of ownership. That alone was sufficient in an action against a mere wrongdoer. (*Nelson v. Mather,* 5 Kan. 151; *Gilmore v. Norton,* 10 Kan. 491.) Possession alone with claim of ownership is itself title of a low degree. (*Mooney v. Olsen,* 21 Kan. 691.) Where one has entered into

possession of a town lot under a contract of purchase, he is the owner of it so far as concerns his right to maintain an action for damages to the property. (*Garrett v. Beers*, 97 Kan. 255, 155 Pac. 2. See notes in 47 L. R. A. 637; 30 L. R. A., n. s., 231.) Allowing even the broadest scope to section 320 of the civil code forbidding parol evidence of plaintiff's transactions between himself and his father and mother, the minutes of the corporation showed that there had been such negotiations, and that plaintiff was to have their interest in the property, and recited the fact that this had been effected. The minutes of the corporation were competent. (*Stevens v. Hicks*, 84 Kan. 351, 353, 113 Pac. 1049.) So, too, the plaintiff's acts of ownership, such as mortgaging the property for a loan shortly before the flood and damages, were competent. (3 Wigmore on Evidence, § 1779.) The facts clearly showed that he was the equitable owner of the property before it was damaged by the flood.

Counsel for the defendants cite cases from other jurisdictions holding that in order to sustain an action for damages to real estate a fee simple title must be shown. But in view of our own decisions, from *Nelson v. Mather*, supra, decided in 1869, down to *Garrett v. Beers*, supra, decided a year ago, it can not be admitted that such a harsh doctrine is any part of Kansas law. We do not discern any material error in the admission of the evidence touching plaintiff's title (except that plaintiff might justly complain of the annoyance and vexation to which he was so unnecessarily put to establish it), and it must be held that plaintiff's ownership of both the realty and personalty was fully established, and that part of defendant's argument relating to the splitting of causes of action is not in point. Neither is the proposition that joint owners or tenants in common must join in an action for damages to the freehold. In this jurisdiction actions are properly maintainable by the real party in interest. (Civ. Code, § 25.) The father and mother had no interest in the property. Indeed, at a former trial (*Davis v. Sim*, 92 Kan. 264, 140 Pac. 851) the father had been a witness and had testified that the property belonged to the plaintiff.

The informal method of winding up the affairs of the family corporation was no concern of the defendants, nor of anybody

else except the state or creditors or the members of the corporation. The informal assignment of the interests of the father and mother in the property was no concern of defendants. That informal assignment was followed by possession and acts of ownership, and acquiescence of the father and mother, and eventually by formal ratification and formal conveyance. That the cause of action accrued before final formal ratification and formal conveyance takes nothing from plaintiff's right to maintain this action.

The next proposition seriously urged by defendants is that the theory on which the case was tried was that the dam was insufficient to hold back the volume of water *pressing* against it. The petition did contain language to that effect, although such recitals were only part of the plaintiff's general complaint that the dam was insufficiently constructed.

The negligence in the construction and maintenance of the dam was thus pleaded:

"That the same was constructed largely of dirt with a few piling and plank to hold said dirt in place, and was twelve to fourteen feet in height and dammed up the water in said Clear Creek and caused it to flow back and accumulate above said dam, in great quantities, and the water so held back by said dam caused a great pressure upon said dam at all times, and in case of freshets and stages of high water the pressure was unusually great. And that said dam constructed as aforesaid, was wholly insufficient to hold back the water that accumulated above said dam and was in constant danger of breaking and permitting the sudden escape of said water into the stream below and over the land of the plaintiff.

"Plaintiff says on several occasions said dam was partly broken down by the pressure of water above it and large quantities of water permitted to escape and flood the country below, and that the defendants had, knowledge of the insecure and the unsafe condition of said dam and of its breaking several times aforesaid, and of the escape of the water therefrom and the flooding of the lands below; and had frequently repaired the same, but always in the same unsafe and insecure manner in which the dam had been constructed in the first instance. . . . And plaintiff alleges that all of the injuries and damages aforesaid were occasioned by the negligence and carelessness of the defendants in imperfectly constructing said dam by dirt, piling and plank, and carelessly and negligently repairing the same, so that it would not hold the water collected in the dam above said pond."

Davis v. Sim.

The proof showed that at least once before the dam had given way, and that it had been insufficiently repaired. A witness for defendants testified:

"Q. You thought at the time you left that it was all boxed up entirely, and those piles cabled together with three-eighths inch wire cable, you thought then it was a good dam? A. Yes, sir.

"Q. You found out afterwards that was n't a good dam? A. Yes, sir.

"Q. You found out you were mistaken then? A. Yes, sir.

"Q. So you went out again and covered that box up with dirt so that the piling would not show at all? A. Yes, sir.

"Q. And then you call that a good job of dam building? A. Yes, sir; that is too."

But it is contended that there is a gross discrepancy between the recitals of negligence in failing to make a dam of sufficient strength to resist the pressure of the water, and the evidence and findings that the water ran over the dam and "melted it down" before it gave way and released the waters, and that instructions asked by defendants should have been given that a failure to prove that the pressure of the waters broke the dam would bar a recovery. We see no error here. There was no material variance between the pleadings and the proof or between the plaintiff's allegations and the jury's special findings. It would hardly accord with justice to declare that the fact that waters flowed over the dam, softening and disintegrating it before it gave way, would bar a recovery. We think the negligence was proved and found by the jury substantially as alleged. (Civ. Code, § 134.)

In *Planing-mill Co. v. Baker*, 74 Kan. 120, 85 Pac. 1016, it was said:

"The rule that the negligence proven and found by the jury must correspond with the averments of the petition is not to be construed in a narrow, technical sense, but with a view of giving effect to section 133 of the code (Gen. Stat. 1901, § 4567) ; and a verdict will not be set aside because some of the language used is inappropriate, where there is sufficient to apprise defendant of the nature of the negligence complained of, and where it manifestly appears that defendant was not misled or prejudiced in maintaining its defense on the merits." (Syl.)

We can perceive no ground on which the question whether water flowed over the dam before the latter gave way could be important unless defendants' contention that the flood was unprecedented—an act of God—had been established, but the

jury upon sufficient evidence resolved that proposition against the defendants.

Comprehensive and explicit instructions fully covering the issues were given and we discern no legal right of defendants which was infringed in the trial of this case, and as the net result is in accord with substantial justice the judgment is affirmed.