No. 24,502.

R. D. McKINLEY, *Appellee,* v. WALKER D. HINES, as Director-general (JAMES C. DAVIS, substituted), *Appellant.*

SYLLABUS BY THE COURT.

COMMON CARRIER—*Shipment of Cattle—Delay in Transportation—Occasioned by Severe Wind and Snow Storm—Damages a Question for Jury—Findings—Burden of Proof.* The facts concerning damages to a shipment of cattle through delay in transit occasioned in part by a blizzard and in part because of insufficient motive power to serve the transportation needs of defendant's passenger and freight service, examined, and held (*a*) that plaintiff's cause of action was sufficiently established to require its submission to a jury, (*b*) that the instructions, although equivocal, were not prejudicial to defendant, (*c*) that an instruction touching the burden of proof was not erroneous, (*d*) and that the question of burden of proof is not material when the issues are determined by comprehensive findings of fact which were not induced by any questionable instructions.

Appeal from Clark district court; LITTLETON M. DAY, judge. Opinion filed May 12, 1923. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* all of Topeka, *William Osmond,* of Great Bend, and *F. C. Price,* of Ashland, for the appellant.

*H. R. Daigh,* of Ashland, and *J. T. Botts,* of Coldwater, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for damages occasioned by delay in the transportation of cattle to market.

Plaintiff engaged two cars to be furnished by defendant at Coats for the shipment of cattle to St. Joseph, Mo. Coats is a station on the Englewood branch of the defendant's railway in southwestern Kansas. The cars were provided on December 22, 1918, and on that evening the cattle were brought in from the pastures of the vicinity, and either that night or early the next morning they were

loaded. A storm was brewing at the time and rapidly grew worse. There was wind and snow which threatened to and did delay railway traffic. However, on the morning of December 23, the plaintiff's cattle were taken by defendant on its freight train to Sawyer, a station seven miles east of Coats. There was a passenger train at Sawyer stalled on account of the storm. The defendant placed the two cars containing plaintiff's cattle on a sidetrack, under the shelter of a large elevator, and detached the engine and used it to make a double header for the passenger train, and thereby defendant with difficulty managed to get that train through the snow drifts to its destination. The cattle remained in the cars at Sawyer until the afternoon of December 25, when they were unloaded. While in the cars and after being unloaded, they were fed and cared for as well as the vicissitudes of the situation would permit. The cattle were kept in the railway stockyard until December 27, when they were reloaded and forwarded to market, and were sold in Kansas City on December 30.

Between the time the cattle were first loaded at Coats and when they reached market, there was, of course, a great and unusual shrinkage and consequent loss and damage. Hence this lawsuit. Defendant denied negligence, alleged that the delay was "caused by an unusual state of the weather, and resulted from extraordinary snow storm, which delayed all traffic on defendant's lines in the state of Kansas, and made it impossible to carry forward plaintiff's live stock; that said condition of the weather could not have been anticipated by defendant, and that if any damage resulted to plaintiff it so resulted through an act of God, for which the defendant was in no wise responsible."

The contract of shipment, which had been made part of plaintiff's petition provided:

"The carrier shall not be liable for any loss, damage or delay due to the acts of God, the elements, the authority of the law, the act or default of the shipper or his agent, the public enemy, mobs, or the unlawful act of parties not in the employ of the carrier, nor for any loss, damage, or delay not caused by the negligence of the carrier, and such negligence shall not be presumed, but must be established."

Jury trial; verdict for plaintiff, and special findings as follows:

"SPECIAL QUESTIONS SUBMITTED BY THE COURT.

"Q. 1. At the time the plaintiff's cattle were loaded at Coats, Kansas, was there a storm then in progress? A. Yes.

"Q. 2. If you answer question No. 1 in the affirmative, then state if such storm grew worse during that day.  A. Yes.

"Q. 3. If you answer the last question in the affirmative, then state if the plaintiff knew of such storm and weather conditions at the time.  A. Yes, locally.

"Q. 4. State whether or not the defendant was negligent in the transportation and handling of the cattle of the plaintiff.  A. Yes.

"Q. 5. If you answer question No. 4 in the affirmative, then state in detail of what such negligence consisted.

"A. By detaching engine for unreasonable length of time.

"SPECIAL QUESTIONS SUBMITTED BY PLAINTIFF.

"Q. 1. Was the storm of December 23d, 1918, and the succeeding day or so one which was beyond reasonable anticipation?  A. No.

"Q. 2. Was the storm referred to in number one such as has occasionally occurred and might have been reasonably expected to occur again at that season of the year?  A. Yes.

"Q. 3. Did the defendant at the time it left the cattle at Sawyer and took the engine off the freight train have notice of apparent danger that its lines might be blocked with snow?  A. Yes.

"Q. 4. Could the defendant by the use of reasonable diligence have removed the cattle to market or some place of safety at Mulvane or further along the line, on Monday, December 23, 1918?  A. Yes."

Defendant contends that the plaintiff failed to make a case for submission to the jury and that the evidence showed that the injury to his cattle was caused by an act of God. The evidence did show that the blizzard was a severe one, but it could not be judicially declared to be an act of God, so as to take the question entirely away from the jury. In *Garrett v. Beers*, 97 Kan. 255, 155 Pac. 2, it was said:

"An 'act of God' as known in the law is an irresistible superhuman cause, such as no reasonable human foresight, prudence, diligence, and care can anticipate and prevent." (Syl. ¶ 2.)

The jury found that the blizzard was not an altogether unusual one; it was not unprecedented. A witness who had resided at Sawyer for 33 years testified:

"You can expect a storm like that during any winter; I recall that the road has been blocked several times, but not every winter; I could not say what year; this country is subject to sudden storms from November to April. We had a bad storm in 1889 on January 6th; last February we had a severe storm; it was worse than the one in December, 1918; the roads were tied up. I recall the winter of 1911 and 1912, I do not remember exactly but about that time the roads were blocked."

McKinley v. Railway Co.

Another witness testified:

"I have lived in this neighborhood for nearly thirty-five years and I do not regard the storm beginning on December 23d as being beyond reasonable anticipation. We have had storms before that of about as much severity. I don't know that you could say frequently, we have occasionally had them. I think that a storm of that kind may be expected as early as the first of December. Men who are raising live stock make preparations for handling them and meeting conditions of that kind in any year as early as December 1st."

And since the blizzard was not one of unprecedented severity, the defendant was not unjustly held to the duty of making provision for getting plaintiff's cattle to market without undue delay. Since the passenger engine was not powerful enough to pull the passenger train through the snow drifts, it probably was commendable rather than censurable on the part of defendant, to sidetrack the cattle cars and use the freight engine to haul the passenger train. But who should bear the consequent loss on the cattle caused by that act of humanity? The plaintiff? That would not be just. He had no duty or responsibility for the comfort of travelers on the passenger train. But the defendant did have such duty. And since the defendant did not have enough motive power to get both the passenger train and the stock train over the road, it cannot complain because it is held accountable for the long delay and consequent shrinkage of the cattle. If defendant had provided itself with sufficient motive power, it would not have been necessary to detach the freight engine from the stock train, nor would there have been such a long and damaging delay at Sawyer.

Defendant complains of the instructions. These were somewhat equivocal. In one place, they read:

"The court instructs you that a snow storm of the kind which occurred beginning December 23, 1918, is what is known as an act of God."

Elsewhere they read:

"While the defendant would not be liable for an injury caused solely by an act of God, yet in this case if you find that the damage, if any, was caused by an act of God but further find that defendant was guilty of negligence in detaching the engine or in caring for the cattle at Sawyer and that such negligence contributed to or entered into the injury complained of, in such case the defendant would be liable."

As to the first of these, if the plaintiff had been defeated, he would have had just ground of complaint. The defendant has none. And while the second quoted instruction seems to leave it to the

jury to determine whether the injury was caused by an act of God
yet the general effect of the two instructions, although somewhat
equivocal, was more favorable to defendant than it should have
been, certainly not prejudicial.

Defendant complains of the instruction relating to the burden of
proof.  It reads:

"The burden is upon the defendant to prove the necessity of detaching the
engine by reason of the storm, and of proving that the injury was solely the
result of an act of God as claimed.  The burden is likewise upon plaintiff to
prove the negligence of defendant and that his damage was occasioned by
such negligence."

It is difficult to see anything wrong with this instruction.  Surely
a defense based on 'act of God' is one to be established by the de-
fendant.  Certainly a defense based upon any sufficient excuse for
detaching the engine and leaving the cattle so long on the sidetrack
was one for the defendant to plead and prove.  On the other hand,
plaintiff had to prove his cause of action—the long and *prima facie*
unreasonable delay in transit which constituted the negligence, and
the consequent damage to the cattle.  Moreover, findings of fact
were returned in this case, and so the accuracy of the instructions
touching the burden of proof is largely academic and immaterial.
These findings were sufficiently comprehensive to meet all the stand-
ards of proof insisted on by defendant, and they were not induced
by nor dependent on the criticised instruction; and the judgment
logically followed the findings.

No plain, palpable error appears in the record which would justify
a disturbance of the judgment.

Affirmed.

HARVEY, J., not sitting.