No. 27,972.

FAY FOSTER et al., *Appellees*, v. THE CAPITAL GAS AND ELECTRIC
COMPANY and THE CITY OF TOPEKA, *Appellants.*

(265 Pac. 81.)

SYLLABUS BY THE COURT.

1. GAS—*Explosion from Negligent Laying of Sewer and Gas Pipes—Parties—
Evidence—Findings.* In an action for damages for the destruction of a
house caused by an explosion of gas, alleged to have occurred through
negligence in the laying of sewer and gas pipes, the proceedings considered,
and *held:* (a) The plaintiffs were the real parties in interest and entitled to
recover on account of the negligence of the defendant gas company; (b)
the finding of negligence by the jury of matters not alleged in the petition
did not vitiate other findings based upon allegations and evidence; (c)
there was evidence to sustain the findings which, when properly reconciled,
were consistent and support the general verdict.

2. SAME—*Instructions.* The instructions as they apply to the issues between
the plaintiff and defendant gas company considered and held to have fairly
stated the issues.

3. MUNICIPAL CORPORATIONS — *Governmental Functions — Liability for Negli-
gence of Agents.* A municipality ordinarily is not liable for negligence of
its agents or employees when engaged in the performance of governmental
functions.

4. SAME—*Governmental Functions—Construction and Maintenance of Sewer.*
The construction and maintenance of a sewer ordinarily is a governmental
function as distinguished from ministerial or proprietary.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB,
judge. Opinion filed March 10, 1928. Affirmed in part and reversed in part.

*Fred S. Jackson, H. A. Russell,* both of Topeka, and *Robert D. Garver,* of
Kansas City, Mo., for appellant The Capital Gas and Electric Company;
*J. E. Addington, Robert Stone, George T. McDermott, Robert L. Webb, Ralph
T. O'Neill* and *Beryl R. Johnson,* all of Topeka, for appellant The City of
Topeka.

*W. Glenn Hamilton,* of Topeka, for the appellees.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover damages for destruc-
tion of plaintiff's house caused by an explosion of gas alleged to
have occurred through the negligence of the defendants in the laying
of sewer and gas mains.

Drains and Sewers, 9 R. C. L. 663. Gas, 28 C. J. pp. 589 n. 3, 604 n. 38.
Municipal Corporations, 43 C. J. pp. 922 n. 19, 971 n. 9, 1127 n. 91, 1130 n. 18.
Vendor and Purchaser, 39 Cyc. pp. 1355 n. 27, 1358 n. 50.

Foster v. Capital Gas and Electric Co.

On December 25, 1925, an explosion occurred in what was known as the Flora house, near plaintiff's property on the west. The defendant gas company owned and maintained a gas main of four-inch cast-iron pipe on Grand avenue, a street running north and south on the west side of the property where the explosion occurred. The main turned east on Kenilworth court and extended to connect with the general distributing system of the city of Topeka. These gas mains were constructed in April, 1925. In July following the city began the construction of a sewer on Grand avenue, paralleling the gas main on that street from Kenilworth court south. At the corner of Kenilworth court, the sewer was located approximately two feet west of the gas main, which distance increased to approximately three feet and five inches at a point opposite the Flora house. The gas mains were laid at a depth of from three and one-half to four feet, the sewer ten feet deeper. While the city was excavating at Grand avenue and Kenilworth court July 21, a heavy rain caused the ditch to cave in exposing the gas main for a number of feet on both Grand avenue and Kenilworth court and caused the main to break. The break was repaired and props placed under it for support. After the city had completed its sewer and refilled the ditch a test was made September 4. At the time the city refilled the sewer ditch no water was available for settling purposes and the filling was done by throwing loose dry dirt in the ditch without tamping. Six weeks thereafter, water was accessible and the ditch was flooded, as a result of which it settled as much as five or six feet in some places and the banks caved in. After the explosion December 25, the gas mains were uncovered and it was found that a four-inch cast-iron main on the west of the Flora residence was broken in two at the place where the service pipe to the Flora residence was connected, the break being caused by the main sagging to the north and south of the point held rigid by the service-pipe connection.

The jury, in addition to a general verdict for plaintiffs against both defendants, answered special questions as follows:

"1. If you find for the plaintiffs and against the city of Topeka, state fully what negligent act or acts you find had been committed by the city and who committed them. A. The city failed to stop the gas leak and remove the danger after the gas company had failed to do so, and both the city and gas company knew that a dangerous condition existed there, owing to the condition of the soil. (2d.) Both parties failed to see that the gas main was properly supported after July break. Those guilty were gas company, Mr. Harrington, Mr. Baldry and Mr. Stratton.

"2. If you find the defendant gas company was negligent, state fully what

negligent act or acts you find to have been committed by the gas company. A. (1st.) Failure to furnish city with plat of main laid. (2d.) Failure to properly install main. Trench not evenly dug. Not properly supported. Too much rigidity. (3d.) Improper protection to break in main in July. (4th.) Failure to have inspector on job during sewer construction. (5th.) Insufficient testing of main under existing circumstances and conditions. (6th.) Failure or improper workmanship in cementing hole in basement wall where gas pipe entered.

"3. Did the city of Topeka, in its sewer work, undermine the main of the defendant gas company? A. No.

"4. Was the break in the gas main, from which the gas escaped, caused by the caving in or settling of the sewer ditch? Answer fully. A. Primarily caused by the cave-in of July, and subsequently caused by further settling."

On motion and further instructions, the jury returned the following additional answers:

"1. Answers to question No. 1: (a) Commissioner Hancock, after notifying gas company that odor of gas was detected between September 4 and December 25, failed to see that gas company had taken care of it, and failed to see that the city, through his department, took care of it. (b) The dangerous condition was that gas was permeating the soil in the vicinity of the Flora house. The soil was not firmly settled around gas service pipe and connection.

"2. Answers to question No. 2: (a) Bottom of gas trench was uneven on account it was leveled by eye. Gas main was leveled by bricks, some places using more bricks than others. Supports not in proportion to weight of pipe, causing sinking of supports. (b) If hole was cemented, the party doing the work did not force cement into hole sufficient to hold.

"3. Answer to question No. 4: By further settling is meant further settling of gas main at point on Kenilworth court at Grand avenue where cave-in occurred in July. Settling was due to improper supports placed under gas main at time of repair, which later gave way, causing stress on gas main toward the Flora house."

It is contended by the gas company that the plaintiffs cannot recover because they are not the real parties in interest. It appears that plaintiffs were purchasing the property in question from L. F. Garlinghouse on an installment contract; that they had paid approximately $600, leaving a balance due of about $3,500. The home having been destroyed, the plaintiffs could no longer make payments to Garlinghouse. They thereupon entered into a new contract with Garlinghouse whereby they were relieved from further liability on the old one upon payment by them to Garlinghouse of the sum of $3,500 when it was recovered from those liable for the explosion. It is argued that this was such an annullment of the original contract of purchase that the plaintiffs cannot recover. It is conceded that the tort is not assignable, for which reason Garlinghouse cannot recover. The defendant cites and relies upon the

rule stated that where a contract for the sale of land is rescinded by mutual consent, the rights of the parties thereunder are extinguished. (39 Cyc. 1355, 1358.) We think the rule has no application here. A cause of action existed between the plaintiffs and Garlinghouse in which the defendants were in no way interested. It was entirely separate and distinct from the cause of action which arose in favor of the plaintiffs through destruction of their property by negligence of the defendants. The supplemental agreement between the plaintiffs and Garlinghouse constituted no satisfaction or release of defendant's liability. The contention cannot be sustained. (See *St. L. L. & D. Rld. Co. v. Wilder,* 17 Kan. 239; *Garrett v. Beers,* 97 Kan. 255, 155 Pac. 2; *Davis v. Sim,* 100 Kan. 66, 163 Pac. 622.)

It is contended that some of the special findings of the jury were based upon negligence not alleged in plaintiff's petition, the effect being to acquit the defendant of the negligence actually charged. While there were findings of negligence by the jury not covered by the allegations of the petition, they were not relied upon by the plaintiffs. The findings of additional negligence were not inconsistent with others supported by proper allegations and do not relieve defendant of its liability. It frequently happens that more than one act of negligence contributes to and is a proximate cause of the injury. It is not necessary that the negligence pleaded be the sole proximate cause. (*Pinson v. Young,* 100 Kan. 452, 164 Pac. 1102.) It was alleged and found by the jury that the defendant gas company failed to have an inspector on the job during the sewer construction, and that the gas company failed and neglected to properly protect and support the walls of earth in the excavation of the sewer ditch and permitted the embankment to cave in, exposing the gas mains and leaving them without proper support or protection. The jury expressly found that the break was primarily caused by the placing of improper supports under the gas main, following the July cave-in, which later gave way, permitting the gas main to settle.

Contention that the findings are inconsistent and do not support the general verdict, and that the findings are not supported by the evidence, have been considered and cannot be sustained. Ample evidence to sustain the findings of the jury need not be analyzed. Under the rule that it is the duty of the court to reconcile the special findings and the general verdict, we find little difficulty in

37—125 Kan.

determining that they are not only not inconsistent but that they support the general verdict.

Complaint of the instructions cannot be sustained. When considered as a whole, the matters complained of are found to be clearly nonprejudicial.

What is here said with reference to liability of the gas company does not apply to the defendant city. In our opinion the city is not liable because the injury was too remote and because the city was engaged in a governmental function. The general rule is that municipal corporations are not liable in damages for negligence of their officers in the discharge of their duties when engaged in governmental functions, unless the liability is expressly imposed by law. (*Harper v. City of Topeka*, 92 Kan. 11, 139 Pac. 1018.) There have been cases before this court in which the municipality was held liable for negligence in carrying out, constructing, or maintaining municipal improvements. (*Kansas City v. Slangstrom*, 53 Kan. 431, 36 Pac. 706; *King v. City of Kansas City*, 58 Kan. 334, 49 Pac. 88; *Wholesale Grocery Co. v. Kansas City et al.*, 115 Kan. 589, 224 Pac. 47.) In the King case it was said:

"In such cases, however, if through any negligence in carrying out the plan or in constructing or maintaining the sewers, the property of a private owner is injured, a liability will arise." (Syl. ¶ 2.)

It will noted, however, that the court in deciding those cases, did not consider or pass upon the question as to whether or not the city was engaged in a governmental function. There are numerous other cases dealing with the question of public streets, in which it has been held that the duty rests upon the city to maintain its public streets in a reasonably safe condition for travel. If the streets are not reasonably safe, there is liability on the part of the city. In the instant case it is argued that the construction of a sewer is a ministerial and not a governmental function, and that the city is liable for any tort committed in the performance of a ministerial function. We think not. The construction and maintenance of a sewer, in our opinion, is governmental as distinguished from ministerial or proprietary. We believe it the better and more reasonable rule to hold that (except in injuries arising from defects in streets or highways), the municipality is not liable when engaged in performing governmental functions. In *Butler v. Kansas City*, 97 Kan. 239, 155 Pac. 12 (the pest house case), it was said:

"It is a general rule that the governmental agencies of the state are not liable in an action of tort for either nonfeasance or misfeasance. (*Fowle v. The Common Council of Alexandria,* 28 U. S. 398, 7 L. Ed. 719; *Macmillan v. Mayor,* 62 N. Y. 160, 164, 165, 20 Am. Rep. 468.) Judge Dillon states the law as follows:

" 'The power or even duty on the part of a municipal corporation to make provision for the public health and for the care of the sick and destitute, appertains to it in its governmental or public, and not in its corporate, or as it is sometimes called, private capacity. And therefore where a city, under its charter, and the general law of the state enacted to prevent the spread of contagious diseases, establishes a hospital, it is not responsible to persons injured by reason of the misconduct of its agents and employees therein.'

"The duty of a municipal corporation to conserve the public health is governmental and it is not liable for injuries inflicted while performing such duty. (6 McQuillin, Municipal Corporations, § 2669.)" (p. 241.)

The court reiterated the rule in *Hibbard v. City of Wichita,* 98 Kan. 498, 159 Pac. 399 (where a child was bitten by a coyote in the city park). In the opinion it was said:

"There seems to be an inconsistency between the rule we now declare and that holding cities liable for negligence in the maintenance of its streets. In the Harper case, after stating that cities in the exercise of their governmental functions are not liable for any neglect or wrongdoing of their officers in the discharge of such duties, unless such liability is expressly imposed by law, this court said: 'An exception to the rule has been made which holds cities liable for damages resulting from defects in their highways.' (p. 13.) McQuillin on Municipal Corporations, in discussing the liability of cities for negligence in the maintenance of streets and sidewalks, says:

" 'This rule is said to be founded upon an "illogical exception" to the general rule of the common law prohibiting actions against municipalities for negligence in the discharge of duties imposed upon them for the sole benefit of the public and from which they derive no compensation or benefit in their corporate capacity.' (Vol. 6, ¶ 2720, p. 5590.)" (p. 501.)

In *Harper v. City of Topeka,* supra, it was said:

"Ordinarily, cities and other municipal corporations in the exercise of their governmental functions are not liable in damages for any neglect, or even wrongdoing, of their officers in the discharge of such duties unless such liability is expressly imposed upon them by law. (*Pfefferle v. Comm'rs of Lyon Co.,* 39 Kan. 432, 18 Pac. 506; *Peters v. City of Lindsborg,* 40 Kan. 654, 20 Pac. 490; *La Clef v. City of Concordia,* 41 Kan. 323, 21 Pac. 272; *City of New Kiowa v. Craven,* 46 Kan. 114, 26 Pac. 426; *City of Caldwell v. Prunelle,* 57 Kan. 511, 46 Pac. 949; 4 Dillon, Municipal Corporations, 5th ed. § 1660, p. 2895, 28 Cyc. 1305.) An exception to the rule has been made which holds cities liable for damages resulting from defects in their highways on certain conditions of notice. . . .

"Another exception to the general rule stated as to the liability of cities

in the state was adjudicated in *Kansas City v. Siese,* 71 Kan. 283, 80 Pac. 626. In that case, the city was held liable in damages for maintaining an attractive nuisance in or adjacent to a street in a thickly settled district of the city, and the doctrine was reaffirmed in *Roman v. City of Leavenworth,* 90 Kan. 379, 133 Pac. 551. . . .

"It is strenuously urged that a city should be liable for any defect or negligence in the maintenance of its parks on the same grounds as in the maintenance of its highways. The necessities of public travel at all times and under all conditions presumably impelled the courts to make the exception regarding the maintenance of the highways in cities as we have noted. Like reasons do not seem to require the extension of the exception to the maintenance of parks; at least this has not been done in this state, and we do not feel that justice would be promoted by making the further exception." (pp. 13, 14, 16.)

The injury complained of in the instant case is not within the exceptions to the general rule. We are not unmindful of a contrary view held in *Lockwood v. Dover,* 73 N. H. 209, where the question is well discussed, but think the rule above announced, that the construction of a sewer is a governmental function, is the better rule, and therefore the city is not liable. (See, also, *Warren v. City of Topeka,* ante, p. 524.)

The judgment as to the gas company is affirmed. As to the city, it is reversed and remanded with instructions to render judgment for the city.

HARVEY, J., concurs in affirming the judgment as to the gas company and in reversing it as to the city, but dissents from the doctrine stated in the fourth paragraph of the syllabus, and the application made of it in the opinion.