OPINION. Arundell, Judge: The major issue is whether the petitioner realized income upon the purchase of its obligations at less than face value, minus unamortized discount, during the years 1940, 1941, and 1943. The years 1940 and-1941 are before us only in connection with the determination of net losses as they affect the years 1942 and 1943. Since the Supreme Court decision in United States v. Kirby Lumber Co., 284 U. S. 1, it is now well settled that a solvent corporation realizes income upon the discharge of its indebtedness at less than face value since “it [the transaction] made available * * * assets previously offset by the obligation.” Subsequent to the Kirby decision, we held in Porte F. Quinn, 31 B. T. A. 142, that such a transaction did not give rise to the realization of income if the taxpayer was insolvent both before and after the transaction, as the discharge of the indebtedness in such a case did not free or make available any assets to the taxpayer. In Porte F. Quinn, supra, we stated: But he [the taxpayer] has not realized income by being relieved from paying that which he in fact is unable to pay. “Gain or profit is essential to the existence of taxable income. A transaction whereby nothing of exchangeable value goes to or is received by a taxpayer does not givé rise to or create taxable income.” [Cases] In Lakeland Grocery Co., 36 B. T. A. 289, we again had occasion to consider United States v. Kirby Lumber Go., supra, and cases subsequently decided, and we there held that since the taxpayer’s assets exceeded its liabilities immediately after the discharge of the indebtedness, it realized income to the extent of the value of the assets which were freed from the claims of creditors as a result of that transaction, even though the assets were not in excess of liabilities prior to the transaction. In these cases we referred to the financial condition in which liabilities exceeded assets as “insolvency.” Both parties cite the above cases and recognize that they lay down the principles under which this proceeding is to be decided. . Their principal difference is as to whether the petitioner was solvent or insolvent both before and after redemption of its bonds. The petitioner claims that it was insolvent. In reaching this conclusion, it compares the values of its tangible assets with the amount of its liabilities. The respondent does not seriously dispute the figures that are used by the petitioner but reaches a conclusion of solvency based largely on the petitioner’s history and its potential earning power. The respondent also takes into consideration what may be termed a “going value.” The existence of a going value has been recognized and taken into consideration by the courts for a variety of purposes. In the case of Los Angeles Gas & Electric Corp. v. Railroad Commission of California, 289 U. S. 287, the Supreme Court considered such a.value as inhering in an operating business for rate making purposes. The Court said, in part: This Court has declared it to be self-evident “that there is an element of value in an assembled and established plant, doing business and earning money, over one not thus advanced,” and that this element of value is “a property right” which should be considered “in determining the value of the property upon which the owner has a right to make a fair return.” * * * The going value thus recognized is not to be confused with good will, in the sense of that “element of value which inheres in the fixed and favorable consideration of customers, arising from an established and well-known and well-conducted business,” which, as the Court has repeatedly said, is not to be considered in determining whether rates fixed for public service corporations are confiscatory. * * * The concept of going value is not to be used to escape the just exercise of the regulatory power in fixing rates, and, on the other hand, that authority is not entitled to treat a living organism as nothing more than bare bones. The principle as thus recognized and limited is obviously difficult of application. * * * It does not give license to mere speculation; it calls for consideration of the history and circumstances of the particular enterprise, and attempts at precise definition have been avoided. * * * The going value of a business has also been taken into consideration under the Federal Bankruptcy Act, In re Nathanson Bros. Co., 64 F. 2d 912, and under state insolvency statutes, Pacific States Savings & Loan Co. v. Hise, 25 Cal. 2d 822, 155 Pac. 2d 809. See also the annotation at 158 A. L. R. 968. In the Nathanson Bros, case, the court defined going concern value as follows: Doubtless the underlying principle of going concern value is that an additional element of value attaches to property, considered in the aggregate, by reason of its having been assembled for the conduct of the given business and its fitness for such use. Neither party has cited any case, nor have we found any, which passes on the question of what weight is to be given to going concern value for the purpose of determining whether a taxable gain is realized by a taxpayer on the redemption of its securities at less than the issue price. Under the circumstances of this case, and in view of the nature of the evidence offered by the parties, it is our view that in determining the solvency or insolvency of the petitioner, the going concern value that attached to its property is a proper subject of inquiry. The petitioner, in our opinion, has not given due weight to the value of its properties as they constituted parts of “an assembled and established plant, doing business and earning money.” Los Angeles Gas & Electric Corp. v. Railroad Commission of California, supra. As to the respondent’s contention, we think it is proper to take into consideration the going concern value and in doing so it is not error to consider the petitioner’s history. “Whether there is going concern value in any case depends upon the financial history of the business.” Federal Power Commission v. Natural Gas Pipeline Co., 315 U. S. 575, 591. However, it seems to us that the respondent places undue emphasis on the reports that were filed with the Pennsylvania Public Utility Commission which are shown by the evidence not to represent an accurate reflection of the petitioner’s history. Also, it appears from the evidence that the respondent minimized the difficulties that were facing the petitioner, including the conversion from trolleys to buses, and its obligations to meet interest on its bonds and to prepare for their maturity. We have examined and analyzed the testimony and the numerous exhibits offered by both parties and it is our conclusion that the petitioner had some going concern value which should be taken into consideration in resolving the question of solvency, but that that value did not exceed the amount of $100,000 in any of the years before us. In the years 1940 and 1941, the petitioner’s liabilities so far exceeded the value of its assets that the addition of $100,000 to assets will not result in solvency for those years. For the year 1943, the balance sheet adjusted for the major items that were stipulated shows an excess of liabilities over assets in the amount of $72,410.58. However, the balance sheet as so adjusted does not take into consideration the correct amount of depreciation sustained on buses. The evidence is that in 1943 and in prior years depreciation on buses was computed on the basis of a 10-year life rather than on a correct 8-year life. Correction of this error will lower the value of the buses by at least $100,000 and will offset any amount attributed to going concern value. With these adjustments the petitioner was still insolvent at the close of 1943. It follows, and we so hold, that the purchase by the petitioner of Conestoga Traction Company bonds in the years 1940,1941, and 1943 did not result in the realization of income. The remaining issue concerns the basis of notes of the Baltimore & Ohio Railroad Company that were called and redeemed by that company in 1944. The petitioner contends for a basis of cost at the time of acquisition by it in 1936, whereas the respondent’s position is that the basis is fair market value in 1940 when the original notes were modified by extension of the maturity date and reduction of interest rate. The case of Mutual Fire, Marine c& Inland Ins. Co., 12 T. C. 1057, involved the question of basis of another issue of bonds of the Baltimore & Ohio Railroad Company, the maturity date of which was extended and the fixed interest rate was reduced in 1940 pursuant to a plan proposed by the company on August 15, 1938, which date is the same as the date of the proposal as to the notes involved in this proceeding. We held for the petitioner in that case and said': It has been held that a recapitalization, and hence a reorganization, within the meaning of section 112 (g) results under circumstances similar to those which took place in 1940 in connection with the Baltimore & Ohio Railroad Co. plan. Sigmund Neustadt Trust, 43 B. T. A. 848; affd., 131 Fed. (2d) 528; Commissioner v. Edmonds’ Estate, 165 Fed. (2d) 715, affirming a memorandum opinion of the Tax Court. We see no valid factual distinction between the Mutual Fire case and the present one, and decision on this point will be for the petitioner. Reviewed by the Court. Decision will be entered under Bule 50.