GEORGE H. WALDRON, Appellant, *v.* THE CITY OF UTICA, Respondent, Impleaded with NICHOLAS D. PETERS and Others, Defendants.

Fourth Department, January 8, 1930.

*Arthur J. Foley*, for the appellant.

*Ernest E. De Rosa, Assistant Corporation Counsel [Emerson M. Willis, Corporation Counsel*, with him on the brief], for the respondent.

EDGCOMB, J. On May 10, 1927, the plaintiff was walking along the easterly sidewalk of John street in the city of Utica, bound for his home, when suddenly, and without any warning, a large shade tree, standing between the walk and the curb on the opposite side of the street, fell across the highway, and knocked him to the ground. He has been awarded a verdict of $10,500 at the hands of an Oneida county jury. The trial judge set aside the verdict upon the ground that it was excessive, and granted a new trial, unless the plaintiff should stipulate to reduce his recovery to $5,000. Whether the court was justified in making such an order is the question to be determined upon this appeal.

Under our jurisprudence, a jury is the tribunal charged with the duty of determining the amount of damages which an injured

party has sustained.  However, the law recognizes the fact that sometimes juries go wrong and award excessive or inadequate verdicts.  The Legislature has, therefore, given to the judge presiding at the trial the right, in his discretion, to entertain a motion made upon his minutes to set aside the verdict and to grant a new trial, for various reasons, among others because the award is excessive or inadequate.  (Civ. Prac. Act, § 549.)  Experience has demonstrated that many occasions arise where justice is promoted by the trial court exercising its unquestioned right to review a verdict upon the facts.

While we are disinclined to interfere with the discretion of a trial judge upon a motion of this character, because of the peculiar advantages which he has of seeing and hearing the parties and their witnesses, and while we appreciate that, in cases of this character, the amount to which a plaintiff is entitled is largely a matter of sound judgment, and that it may truthfully be said, " 'Tis with our judgments as our watches,— none go just alike, yet each believes his own," nevertheless, it must not be forgotten that the jury, too, sees and hears the witnesses, and that the combined judgment of twelve men of various callings and walks of life is not to be lightly set aside.  The action of the trial judge is not final or controlling.  The duty still rests upon this court to review the testimony, and to reverse the order and reinstate the verdict, if it is apparent that the evidence justified the jury in fixing the damages at the amount of their verdict.  (*Czirr* v. *Lowrey,* 218 App. Div. 202; *Duke* v. *Fargo,* 172 id. 746.)

At the time of the accident Mr. Waldron was forty-eight years of age, in the prime of life, and in the best of health.  He was city editor of the Utica *Observer-Dispatch.*  His profession requires an ability to concentrate, and to work long hours at a time.  To keep abreast with the times, he is compelled to do a large amount of reading.  It is not disputed that he was seriously injured.  He was rushed to the hospital, where he remained for two weeks.  He was then taken to his home.  It was not until the middle of September, four months after the accident, that he was able to go to his office for any portion of the day.  He went back to his city desk in the early part of the winter.  From then on to the time of the trial, nearly two years after the accident, he was filling his old position, with help which he did not have to have before he was injured.  There is credible evidence which would warrant the jury in finding that after the accident he had severe headaches; that his strength was gone; that he easily became tired and exhausted; that he was nervous; that his memory was poor; that he felt a disinclination to do anything more than he was compelled

to do; that he could not read for any length of time; that he worried and was apprehensive about his work; that he had no ambition or initiative. Several doctors testified that he had a fracture of the outer table of the skull. Dr. Guile, a prominent physician of Utica, said that these injuries were permanent, and that, in his opinion, Mr. Waldron had sustained an injury to the brain, traumatic in origin, and that some of its structures had been torn and lacerated as a result of the blow. While the plaintiff lost no wages during his absence from his desk, that was his good fortune, and was due to the liberality of his employers. The jury could easily have found that his usefulness and availability as a city editor on a metropolitan daily was very much impaired, and that his earning capacity in the future had been lessened by reason of his injuries. If the jury believed the testimony of the plaintiff and his witnesses — and they had a right so to do — $10,500 is not, in our judgment, so excessive that it ought to be set aside, when we take into consideration the nature and requirements of Mr. Waldron's profession, and his age and previous condition of health.

Notwithstanding the fact that the learned trial court set aside this verdict upon the sole ground that it was for excessive damages, the respondent has the right on this appeal to present and urge to this court every exception and every ground which would entitle it to a new trial under section 549 of the Civil Practice Act. (*Logan* v. *Guggenheim*, 230 N. Y. 19, 21.)

Respondent urges that its motion for a nonsuit should have been granted because no actionable negligence on the part of the city was shown, and that for this reason the order appealed from should be affirmed.

The duty rested upon the city to keep its streets reasonably safe for ordinary travel. (*Ehrgott* v. *Mayor, etc., of City of N. Y.*, 96 N. Y. 264; *Metzroth* v. *City of New York*, 241 id. 470.) That obligation, however, extended only to the exercise of reasonable care and vigilance; the city was not an insurer of the safety of those who used John street. (*Hunt* v. *Mayor, etc., of N. Y.*, 109 N. Y. 134; *Ring* v. *City of Cohoes*, 77 id. 83.)

The evidence shows that the tree in question was in a healthy, sound condition, and that there was no unusual wind blowing at the time of the accident. The tree fell because all the roots on the west side had been cut off close to the trunk, and its support had thus been taken away. The city had notified the owner of the adjoining property to repair her sidewalk, and in compliance with such notice she had let a contract for a new cement walk. To get the proper grade, the contractor had cut away the roots of the

tree a day or two before the accident, and it had been left without any support on one side.

Neither the property owner nor her contractor could be considered agents of the city in such a sense as to make it liable for their acts under the doctrine of *respondeat superior*. (*Frost* v. *Village of Port Chester*, 139 App. Div. 197.)

Respondent, through its public works department, issued the necessary permit for the construction of the walk. Unless the work to be done constituted a nuisance or was dangerous *per se*, the bare issuing of such license did not make the city liable. (*Von Lengerke* v. *City of New York*, 150 App. Div. 98; affd., 211 N. Y. 558; *De Agramonte* v. *City of Mount Vernon*, 112 App. Div. 291.) Concededly, the mere laying of a cement sidewalk would not come within either category.

There is more here than the naked consent of the city. The permit contained a provision that it should be " inoperative unless stakes for the construction have been given by the City Engineer's Office." As a consideration for the granting of the license, the property owner and her contractor were required to agree to the conditions imposed therein. There is evidence which would warrant a finding that the city engineer, or his subordinates, fixed the grade at which the walk was to be laid, and drove the necessary stakes, and that the walk was laid in conformity therewith. To comply with the grade as fixed, it was necessary to cut away these roots, and to take away the support of the tree on the west. The city engineer must have known these facts; at least the jury could have so found. The roots lay close to the surface of the ground, and this condition was easily discernible at the time the stakes were driven. If the city, through its engineering department, required this work to be done in such a manner that it would leave the tree in a dangerous condition, it placed itself in the attitude of a principal, and cannot escape liability on the theory that the work was done and the roots were actually cut by an independent contractor. (*Speir* v. *City of Brooklyn*, 139 N. Y. 6, 12.)

I think that the jury was justified in finding that respondent authorized, and in fact directed, this work to be done in such a way as to create an inherently dangerous condition in John street, one which rendered the highway unsafe, and which a reasonably prudent person would have deemed necessary and proper to guard against.

The jury was told that there could be no recovery against the city if the grade at which the walk was laid was not authorized by the city engineer.

There can be no claim that plaintiff was in any way to blame

for this accident. He had a right to assume that it was safe to walk along the sidewalk.

We think that a question of fact was presented for the jury, and that the verdict was not against the weight of evidence, either as to defendant's negligence or plaintiff's freedom from contributory negligence.

We have, therefore, concluded that the verdict should not have been set aside.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and THOMPSON, JJ.

Order reversed on the facts and verdict reinstated, with costs.