## Lusk v. Commonwealth.

May 12, 1942.

R. Herman Cannon and J. Howard Holbert for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

At the August, 1941, term of the Grayson circuit court the grand jury returned an indictment against the appellant charging him with the offense of maliciously shooting and wounding W. A. Smith, sheriff of Grayson county, with intent to kill said Smith. Upon a trial of the case the jury found appellant guilty as charged.in the indictment and fixed his penalty at 15 years in the penitentiary. From a judgment entered upon that verdict the appellant has prosecuted this appeal, insisting upon a reversal of the judgment because (a) the court

refused to grant his motion for a continuance of the case; (b) the court refused to grant a change of venue; and (c) the court erred in its instructions to the jury.

The offense was committed on August 30, 1941, and the case assigned for trial on the 13th day of September, 1941, at the same term of court, which was the last day of that term. The appellant executed bond and was released from jail on the 2nd day of September, which was eleven days before the trial. When the case was called for trial appellant was not present in court and his counsel assigned as the reason for his absence that he was afraid W. A. Smith, the prosecuting witness, would kill him or do him bodily harm and asked that the court disarm Smith and take other necessary precautions for the protection of appellant. The court ordered appellant's bond forfeited and an alias bench warrant issued for his arrest and he was brought into court at about 2:30 p. m. on the same day, and appellant then moved the court to continue the case until the succeeding term of the court and filed his affidavit in support of the motion, stating, in substance, that when he was released from jail on September 2 he employed Herman Cannon, a regular practicing attorney of the Grayson County Bar, to defend him in the action, and at that time Mr. Cannon's father was seriously ill and subsequently died on the third day of September and for that reason he, appellant, had but little opportunity to consult or advise with his counsel; that on the 10th day of September, 1941, an aunt of said counsel's wife died which further prevented him from having the necessary and proper consultations with his counsel, and for the reasons set out his counsel could not give his case proper attention. He further stated that he had been prevented from properly preparing his defense due to threats made by the prosecuting witness, W. A. Smith, sheriff of Grayson county, and that said Smith was taking an active part in summoning and interviewing witnesses whom he would ask the Commonwealth to use, and for fear of death or great bodily harm he had been forced to make every effort to avoid any contact with Smith because he was armed. He further stated that on September 11 he employed V. R. Logan, an attorney of the Edmonson County Bar, to assist in defending him and since the employment of Logan he, appellant, had made every effort to be ready for trial but that he had

been unable to properly prepare his defense within the limited time he had. He further stated that the Leitchfield Gazette, a weekly newspaper published in Leitchfield, Kentucky, the county seat of Grayson county, carried a report to the effect that no continuance of the case would be permitted and that such reports prejudiced his case and made it impossible for him to receive a fair and impartial trial at the present term of the court; he further stated that "although the affiant knows and frankly stated that he is convinced that such statements were without any authority of the Judge of this Court, but notwithstanding this fact, such reports give the impression that the court is biased against the defendant." He further stated that due to the fact that W. A. Smith is the sheriff of Grayson county he, Smith, has had and will have great bearing upon the testimony of witnesses both for the defendant and the Commonwealth, but that should the action be continued until the next regular term of the court Smith will no longer be sheriff and the witnesses will feel free to testify to the truth of the occurrences at the time the offense is alleged to have been committed.

The affidavit is signed by R. H. Cannon and V. R. Logan, "Attorneys for defendant," but it is sworn to only by the appellant. The names of the attorneys do not appear in the affidavit as "affiants" but they merely sign the affidavit in the usual manner as attorneys sign pleadings for a litigant. Hence, we have only the affidavit of appellant without any affidavit of his counsel stating that they had not sufficient time or opportunity to prepare appellant's defense. It is also to be noticed that appellant's affidavit reveals nothing more than his conclusion that his counsel was prevented from preparing his defense because of the illness and death of Cannon's father, but we have not a word from his counsel as to whether or not the limitation of time or other casualties and misfortune prevented him from preparing appellant's defense. If counsel had been deprived of the opportunity of preparing appellant's defense for the reasons stated in appellant's affidavit or for any other reason, it is indeed singular that he did not file his affidavit setting forth such reasons.

It is the established rule that the granting of a continuance is within the sound discretion of the trial court and this court will not disturb the action of the trial

court in such matter unless it appears clearly that the trial court abused its discretion. Under the showing made we are unable to say that the trial court abused its discretion in overruling appellant's motion for a continuance.

It is next insisted that the court should have granted appellant a change of venue because of the influence the prosecuting witness as sheriff of Grayson county might have with the jurors and the public generally. However, we do not find in the record any petition or application for a change of venue as provided in Section 1110 of the Kentucky Statutes, or otherwise. It is insisted for appellant that the facts set out in appellant's affidavit for a continuance were sufficient notice to the court that appellant could not or might not receive a fair trial in Grayson county, and for that reason the court should have granted a change of venue without any formal application therefor. We find no merit in this contention.

As stated above, the trial commenced at about 2:30 p. m. on Saturday, the last day of the term of court. It appears that the Monday following was the beginning of the regular term of the circuit court in another county of the judge's district, and it appearing that the trial of appellant could not be concluded on Saturday, the court entered an order extending the term to and including Sunday. It is insisted that it was error to begin the trial on the last day of the term when it was apparent to the court that the trial could not be finished on that day and that an order extending the term would be necessary. No reason is pointed out in brief of counsel, nor can we conceive of any, wherein appellant's rights could have been prejudiced because the trial was commenced on the last day of the term, or that an order was made extending the term so as to include Sunday. It is not contended that the court had no right to extend the term, nor is there any complaint made of the proceedings had on Sunday. We are unable to see any merit in this contention.

This brings us to consideration of the alleged erroneous instructions given to the jury. Since the propriety or impropriety of an instruction depends mostly on the facts in the particular case, a review of the evidence becomes necessary. On the night the controversy occurred between appellant and Smith the latter was called in his

official capacity as sheriff of the county to investigate an automobile accident and Smith and one of his deputies went to the scene of the accident and found a man severely wounded and sent him to town to a doctor; Smith then went to a dance hall, where the trouble later occurred, and received information that there was fighting inside the hall and he went into the hall and made one arrest but he did not see appellant at that time; he took the arrested person to Leitchfield and lodged him in jail and then went back to the scene of the automobile accident to make a further investigation of the man who was injured and then went back to the dance hall. There was another little disturbance between some boys who were threatening to fight and Smith chastised or cautioned the boys and subdued the controversy between them and about that time he noticed appellant standing facing him at a distance of about ten feet away and someone passed between appellant and Smith and Smith noticed appellant "muttering something about Bill Smith and fumbling about his side pocket" but he did not say anything to him; appellant walked about 25 feet away with two other boys and engaged in conversation with them, then a boy came to Smith and gave him information that "Jack" (appellant) was going to shoot him. The court sustained objections to the statement of the witness as to what the boy told him, but later the witness was asked if he did receive some information from Van Haycraft and he answered in the affirmative; Smith then went out of the building and saw appellant and two other boys engaged in conversation and he approached appellant and said that he wanted to see Jack Lusk but he did not believe that Jack would shoot him and did not believe that anybody had enough against him to shoot him. Immediately after he came out of the door he could see that appellant had a gun in his hand but he did not know whether it came out of his side pocket or just behind his leg but he thought he drew it from a side pocket; when he got within about 20 feet of appellant the latter held up a gun (pistol) in front of his face and then immediately opened fire on Smith, one bullet striking him across the stomach and the other just above the hip pocket of his trousers. Up to that time Smith had not said anything to appellant and had never had any previous trouble with him. He further stated, however, that sometime previous thereto he approached appellant in regard to a car he was driving that others did not want him

handling. This is the only intimation that appellant might have entertained any ill feeling toward Smith.

On cross-examination Smith testified that he had no warrant for the arrest of appellant and when asked whether appellant was violating the law in his presence he said he had done nothing except he had the gun in his hand; that he did not inform him of any intention to arrest him but approached him for the purpose of talking to him because he wanted to find out why he wanted to shoot him but appellant did not give him time to talk to him but proceeded to open fire on him. Van Haycraft testified that about three or four minutes before the shooting took place he saw appellant standing out in front of the dance hall and saw something in his hand that looked like a gun and heard him say he was going to shoot Bill Smith; he immediately went into the dance hall and told Smith to be careful that "Jack" (appellant) said he was going to shoot him. He further said that he did not see the shooting but he heard two shots fired which were immediately followed by the firing of two pistols. This tends to corroborate Smith in his statement that appellant shot him twice and he then got his pistol and he and appellant emptied their pistols at each other. Smith was corroborated by other witnesses that appellant opened fire on him at the time and under the circumstances described by him, while on the other hand appellant testified that Smith assaulted him and fired the first shot. The evidence is conflicting and it is conceded in brief for appellant that the evidence presented a question for the jury and there is no contention made that it is insufficient either to take the case to the jury or to sustain the verdict.

The only question remaining to be determined is the propriety or impropriety of instruction No. 4 which told the jury, in substance, that it was the duty of Smith as sheriff of Grayson county to maintain the public peace in the county, and if the jury believed from the evidence to the exclusion of a reasonable doubt that the defendant on said occasion had threatened to shoot Smith and if said threat, if any, had been then and there communicated to Smith, then Smith had the right as sheriff to approach the defendant in a peaceable manner to remonstrate with him against such threat, if any, and to desist from such threats or shooting, and if the jury believed to the exclusion of a reasonable doubt that Smith

did so, or attempted to do so, and that defendant had made said threats which had been communicated to Smith and that defendant thereupon, at a time when he was in no danger real or to him apparent, at the hands of Smith assaulted or attempted to assault Smith with a pistol, then Smith as sheriff had the right to use such force as was necessary or in the exercise of a reasonable judgment appeared to him to be necessary to overcome said assault, if any, and to protect himself therefrom.

The argument for appellant is that the difficulty between appellant and Smith was purely of a personal nature and did not involve in any way the official capacity of Smith as sheriff, and hence no instruction dealing with the right of Smith as sheriff, or in his official capacity, was necessary or warranted by the evidence, and since the instruction emphasized Smith's duties and rights as sheriff the instruction was prejudicial. It is obvious from the evidence that there was a general disturbance and an intolerable state of affairs existed in and about the dance hall where the shooting occurred. People were fighting, quarreling and attempting to fight, and in the circumstances Smith as a conservator of the peace had the right to keep the peace and to subdue disorderly conduct, threats and demonstrations which might be calculated to lead to assault or to provoke others to commit a breach of the peace or other violations of the law. According to the undisputed evidence of Smith while this general disturbance and tense situation existed, he heard appellant mention his name and at the same time was "fumbling" with his pocket and he discovered a pistol in appellant's hand which apparently he had taken from his side pocket and later raised it up in front of his face. Previous thereto Smith had been informed that appellant had made threats against him.

Under the proven facts and attendant circumstances we are unable to say that Smith was acting entirely in a personal capacity in approaching appellant or that he had no right to do so in his official capacity or duties as sheriff. We think he had the right and it was his duty to approach the appellant in a proper manner and advise with him or attempt to reconcile him in his apparent fury and demonstrations, particularly since he had received reliable information that appellant had made threats of violence and had the means with which to carry them out and handling a pistol, a deadly wea-

pon, in a threatening and boisterous manner. Further-more, appellant knew that Smith was the sheriff of the county and according to an abundance of evidence for the Commonwealth he, appellant, shot Smith when he approached him without even knowing whether or not Smith's purpose was to arrest him because of his conduct with the pistol or for any other cause, and knowing Smith was the sheriff no doubt appellant assumed or believed that Smith was approaching him in his official capacity rather than seeking a personal controversy. The instruction does not assume that Smith had the right to actually arrest appellant or was approaching him for that purpose, but merely advised the jury that in the circumstances he had the right as sheriff to approach appellant and advise or remonstrate with him concerning his threats and conduct in an effort to subdue or reconcile him in his apparent fury and disturbed condition of mind and persuade him to desist committing any acts of violence against Smith or others. In the peculiar circumstances of the case we do not think the instruction was prejudicially erroneous.

Finding no error prejudicial to appellant's substanial rights, the judgment is affirmed.