215 P.2d 999

SPLINTER v. CITY OF NAMPA et al.

METZER v. CITY OF NAMPA et al.

Nos. 7538, 7537.

Supreme Court of Idaho.

Jan. 28, 1950.

On Rehearing April 4, 1950.

Earl E. Garrity, Nampa, Elam & Burke, Boise, for appellants.

J. F. Martin, Boise, Frank F. Kibler, Nampa, G. H. van de Steeg, Nampa, for respondents.

GIVENS, Justice.

These two cases were heard together; the main, fundamental issues being common to both. The differences are that appellant Splinter owned the building where the explosion as hereinafter detailed, occurred, alleging the storage tank was installed without his knowledge or consent; appellant Metzer was employed as a waitress in the restaurant, the operators of which were lessees from appellant Splinter.

In addition to allegations detailing the above situation, the amended complaint of appellant Metzer and second amended complaint of appellant Splinter in common allege that: the American Butane Company was engaged in the business of dispensing and selling liquefied gas commonly known as Butane gas for cooking and heating purposes; that the premises in question had been leased October 1, 1945, for three years to the Forbidden Palace Restaurant owned and operated by some six individuals; that thereafter on or about December 3, 1945, the city council of the city of Nampa granted a permit to the Butane Company and lessees to install in the alley at the rear of the building, a 155-gallon Butane storage tank, under the direction and supervision of the city engineer; that said tank was installed—"* * * by removing the concrete wall on the north-westerly side of said vertical shaft to a point approximately 6 inches from the bottom thereof, and excavating a pit north-westerly from said shaft immediately adjacent and parallel to the rear wall of said building of sufficient dimensions to bury said tank approximately two feet deep. That the front end of said tank, to-wit: the end containing the valves and filling devices, protruded into said vertical shaft, and that thereafter, said vertical shaft was used as a means of ingress and egress of hoses used for the purpose of filling said tank with liquefied petroleum gas." That the shaft above mentioned extended down into the basement of the building, which had lava rock and cement walls and a concrete floor over half thereof, with a stairway from the rear portion of the building into the basement, the shaft being 30 inches in depth, 36 inches in length by 24 inches in width, formerly used to permit the entry of coal and other supplies from the alley into the basement.

The complaints further allege in appropriate language that it was negligent for the Butane Company and the City of Nampa to place the outlet of the tank in this shaft and that so locating the tank caused a situation of peril and constituted a nuisance, menace and hazard to the lives and property of the public in general and to the property of appellant Splinter in particular, in that in replenishing the tank from the company's tank trucks, gas was apt to be spilled and being heavier than

air, would collect and settle in the basement and, if ignited, would explode; that on November 15, 1947, at about eight o'clock in the evening while the tank was being filled by the company, an explosion did take place totally wrecking the building, the basis of the suit for damages by appellant Splinter for the value of the building, and by appellant Metzer for injuries received by her.

General demurrers were interposed in both cases, challenging the complaints as not stating facts sufficient to constitute causes of action against the city, which were sustained and upon defendants' refusal to plead further, judgments of dismissal were entered—hence these appeals.

The respondents' pertinent and ultimate contentions as bases to support the ruling sustaining the demurrers, and decisive of the issues, may thus be summarized: that the city in granting the permit was exercising governmental and not proprietary powers; that the proximate cause of injury, both to the building and to appellant Metzer, was the spilling of the gas and not the location of the tank, and attendant suggestions of nonforeseeability of damage, effect of intervening independent incidents, contributory negligence disclosed in the complaints, and somewhat inferentially that the city, in connection with its control of the streets and alleys, owes no duty to anyone other than a traveler thereon; and that the permit under section 52-108, I.C. was a complete defense.

We are passing only on the sufficiency of the complaints to state causes of action, though perforce we discuss substantive propositions.

■ This court has held repeatedly, and it must now be taken as established law, that the city owns the streets and alleys and has complete and exclusive control and dominion thereof. Carson v. City of Genesee, 9 Idaho 224 at page 253, 74 P. 862, 108 Am.St.Rep. 127; Village of Sand Point v. Doyle, 11 Idaho 642 at page 651, 83 P. 598, 4 L.R.A.,N.S., 810; Boise Development Co., Ltd., v. Boise City, 30 Idaho 675 at page 688, 167 P. 1032.

■ That the granting of permits to place structures in, under, on, or about the streets and alleys is the exercise of proprietary and not governmental functions; Baillie v. City of Wallace, 24 Idaho 706 at page 713, 135 P. 850; Powers v. Boise City, 22 Idaho 286 at page 294, 125 P. 194.

■ That in the exercise of proprietary as distinguished from governmental powers, the city is under the same obligations and liabilities and owes the same duty to everyone as does a private owner; Eaton v. City of Weiser, 12 Idaho 544 at page 553, 86 P. 541, 118 Am.St.Rep. 225; Renstrom v. City of Nampa, 48 Idaho 130 at page 135, 279 P. 614; Wilson v. City of Portland, 153 Or. 679, 58 P.2d 257 at page 259; Adams v. City of Toledo, 163 Or. 185, 96 P.2d 1078 at page 1081; Beall v. City of Seattle, 28 Wash. 593, 69 P. 12, 61 L.R.A. 583, 92 Am.St.Rep. 892 at page 900.

■ That private owners are liable for damages inflicted upon persons in or near their premises by negligence of the owner in connection with his property, though the injury is inflicted outside and beyond the limits of his property. Crow v. Colson, 123 Kan. 702, 256 P. 971 at page 973, 53 A.L.R. 457; Murray v. Frick, 277 Pa. 190, 121 A. 47, 29 A.L.R. 77; Douglas v. Johnson, Sup., 16 N.Y.S.2d 644; Hopper v. Comfort Coal & Lumber Co., Inc., Sup., 80 N.Y.S.2d 351; Brownsey v. General Printing Ink Corp., 118 N.J.L. 505, 193 A. 824; Beckwith v. Somerset Theatres, 139 Me. 65, 27 A.2d 596; Lavelle v. Grace, 348 Pa. 175, 34 A.2d 498, 150 A.L.R. 366; Atchison v. Texas & P. Ry. Co., 143 Tex. 466, 186 S.W.2d 228; Louisville Baseball Club v. Hill, 291 Ky. 333, 164 S.W.2d 398; Delaney v. Supreme Investment Co., 251 Wis. 374, 29 N.W.2d 754; Pitcairn v. Whiteside, 109 Ind.App. 693, 34 N.E.2d 943.

■■ The fundamental reason for municipal liability is its complete and exclusive dominion over and control and ownership of the streets and alleys. This tank could not have been legally placed in the alley without the city's permission, sanction and consent. 50-1141, I.C.

■ The scope of liability of a municipality in this state, when exercising proprietary functions, is that resting upon a private owner and a private owner is liable to those outside his premises though not presently or prospectively using the facilities; therefore, on a parity of reasoning, the city is thus liable and the authorities so hold: Dunn v. Boise City, 48 Idaho 550, 283 P. 606; Speir v. City of Brooklyn, City Ct., 19 N.Y.S. 665, Id., 139 N.Y. 6, 34 N.E. 727, 21 L.R.A. 641, 36 Am.St.Rep. 664; Waldron v. City of Utica, 228 App.Div. 37, 238 N.Y.S. 401 at page 407; City of Chicago v. Smith, 95 Ill.App. 335; Nixon v. City of Chicago, 212 Ill.App. 365 at page 375; City of Fort Worth v. Lee, 143 Tex. 551, 186 S.W. 2d 954, 159 A.L.R. 125.

■ It would be a wholly illogical and an unjustified anomaly to hold the city liable for negligence to a passerby on the highway injured by the explosion from this tank and to hold it not liable for similar injury to person or property adjacent to the tank, since the city has exclusive control over the alley and both passerby and adjacent property owner must equally, and have a right to, rely on the city to protect them against dangerous, particularly latent, conditions in the street, potentially hazardous and threatening to one as much as to the other. The deducible rule is that if it may be reasonably foreseeable that damage may result from a structure negligently placed in, on or about a street by or with the consent of the city, going to the city's participation in or knowledge, actual or necessarily implied, of the negligence, that the city is liable to anyone, any property, proximately injured thereby; of course, subject to any

defense that might be interposed by a private owner or actor.

■ The degree of care to be exercised must be commensurate with the danger or hazard connected with the activity. The highest degree of care must be exercised in connection with storing, handling, etc., of highly inflammable and explosive substances. Eaton v. City of Weiser, 12 Idaho 544 at page 554, 86 P. 541, 118 Am. St.Rep. 225; Ellis v. Ashton & St. Anthony Power Co., 41 Idaho 106 at page 119, 238 P. 517; Miller v. Gooding Highway Dist., 55 Idaho 258, 41 P.2d 625; Foley v. Northern Calif. Power Co., 14 Cal.App. 401, 112 P. 467; Oklahoma Gas & Electric Co. v. Oklahoma Ry. Co., 77 Okl. 290, 188 P. 331; Tulsa Stockyards Co. v. Moore, 184 Okl. 6, 84 P.2d 37; Scott v. Pacific Power & Light Co., 178 Wash. 647, 35 P.2d 749; Bradley v. Conway Springs Bottling Co., 154 Kan. 282, 118 P.2d 601 at page 605; Roselip v. Raisch, 73 Cal.App.2d 125, 166 P.2d 340 at page 345; Been v. Lummus Co., 76 Cal.App.2d 288, 173 P.2d 34 at page 36.

Respondent argues there is liability only to users of the streets. While many of the cases considering the liability of a municipality for negligence in connection with streets and alleys state such liability is to travelers, they do not declare such liability is exclusive. The converse of the situation is considered in the cases below, but the same principle in reverse applies—hence the authorities are contrary to respondent's position. Douglas v. Johnson, Hopper v. Comfort Coal & Lumber Co., Inc., Brownsey v. General Printing Ink Corp., Beckwith v. Somerset Theatres, Lavelle v. Grace, Atchison v. Texas & P. Ry. Co., Louisville Baseball Club v. Hill, Delaney v. Supreme Inv. Co., Pitcairn v. Whiteside, supra; White v. Suncook Mills, 91 N.H. 92, 13 A.2d 729; Schaut v. Borough of St. Marys, 141 Pa. Super. 388, 14 A.2d 583.

■ Applying these principles to the cases at Bar, the complaints not only alleged the city granted the permit, but actively participated, through its city engineer, in placing the tank in the alley with its end, where the intake valves and pipes were located, in this shaft and it is alleged the city, as well as the company, knew or should have known that gas in being transferred from the trucks to the tank was apt to be spilled and the consequent gas fumes, being heavier than air, would descend into the basement, being highly inflammable and explosive. The complaints thus stated causes of action. Eaton v. City of Weiser, supra; Douglas v. City of Moscow, 50 Idaho 104, 294 P. 334; Smith v. Kansas City, 158 Kan. 213, 146 P.2d 660 at page 663; McClammy v. City of Spokane, 36 Wash. 339, 78 P. 912 at page 913; Boggess v. King County, 150 Wash. 578, 274 P. 188 at page 191; Adams v. City of Toledo, supra; Wheeler v. City of Fort Dodge, 131 Iowa 566, 108 N.W. 1057, 9 L.R.A.,N.S., 146; Moore

v. City of Bloomington, 51 Ind.App. 145, 95 N.E. 374; Carlisle v. Union Public Service Co., 137 Kan. 636, 21 P.2d 395 at page 397.

■ The negligence charged is perfectly plain, simple, direct and unambiguous, being the placing of the tank where it was. The subsequent events which led up to and ultimately resulted in the explosion were merely links in the sequence which inevitably resulted in the disaster. The city not only permitted, but participated in the location of the tank. While others thus intermediately participating may have been likewise liable, it would be for the jury to determine what was the proximate cause and as clearly stated in the authorities cited below, in the absence of a clear break from initial cause to ultimate injury, the initial negligence may be held to be the proximate cause. The ultimate is thus, of course, a question for the trier of the facts when developed. We are merely passing upon the sufficiency of the complaints.

The following cases state the correct rule as to proximate cause and so dispose of that phase and completely refute respondents' claim of absolution from asserted intervening exculpating causations, and support the complaints: Dunn v. Boise City, supra 48 Idaho at page 555, 283 P.2d 606; Berland v. City of Hailey, 61 Idaho 333 at page 339, 101 P.2d 17; Crow v. Colson, Carlisle v. Union Public Service Co., Miller v. Gooding Highway District, supra; Clark v. E. I. DuPont DeNemours Powder Co., 94 Kan. 268, 146 P. 320, L.R.A.1915E, 479, Ann.Cas.1917B, 340; König v. Nevada-California-Oregon Ry., 36 Nev. 181, 135 P. 141; Poole v. Tilford, 99 Or. 585, 195 P. 1114.

Respondents contend appellant Splinter's complaint discloses he was guilty of contributory negligence because the tank was installed so long prior to the accident, that he knew or was charged with knowledge, or must have known thereof and accepted and acquiesced in the hazard.

The complaint specifically alleges he did not know of the installation and that it was without his consent, and does not give the date of installation. Respondents present no authorities holding that the owner of a building, merely by reason of such relationship, is charged with knowledge of what his tenant does.

■ Contributory negligence is a matter of defense and its absence need not be negatived in the complaint. Section 5-816, I.C.

These statements of the rules with regard to knowledge seem pertinent and aptly phrased and supported by competent authority:

"As it generally is expressed, a plaintiff will not be held to have been guilty of contributory negligence if it appears that he had no knowledge or means of knowledge of the danger, and conversely, he will be deemed to have been guilty if

it is shown that he knew or reasonably should have known of the peril and might have avoided it by the exercise of ordinary care." 38 Am.Jur. 861, § 184, n. 12.

"A plaintiff's knowledge of the physical characteristics of the offending instrumentality or condition does not, in itself, constitute contributory negligence. * * *, it is the appreciation of, or the opportunity to appreciate, the peril in an instrumentality or condition, rather than a knowledge of its physical characteristics, that bars a plaintiff of recovery for negligence." 38 Am.Jur. 864, § 188, n. 3-6.

 If contributory negligence appears on the face of the complaint, it bars recovery; but the contributory negligence must appear so conclusively that reasonable minds could not differ with respect thereto. Burns v. Getty, 53 Idaho 347, 24 P.2d 31; Adkins v. Zalasky, 59 Idaho 292 at page 298, 81 P.2d 1090; Allan v. Oregon Short Line R. Co., 60 Idaho 267 at page 272, 90 P.2d 707. Splinter's complaint herein does not disclose any or such negligence, as a matter of law, to conclude him.

 Section 52-108, I.C. refers only to statutes and does not authorize an unlawful, wrongful or negligent act. Village of American Falls v. West, 26 Idaho 301, 142 P. 42; People v. City of Reedley, 66 Cal.App. 409, 226 P. 408; Thompson v. Kraft Cheese Co., 210 Cal. 171, 291 Pac. 204 at page 208; Hassell v. City and County of San Francisco, 11 Cal.2d 168, 78

P.2d 1021 at page 1022. Thus, if this section be applicable to a permit granted by a city, not even an ordinance, if affords no defense.

Judgments are reversed and demurrers ordered overruled and actions reinstated. Costs to appellants.

HOLDEN, C. J., and PORTER, J., concur.

TAYLOR, Justice (dissenting).

The principal objection to the conclusion reached is that a new duty and a new liability is imposed upon the city, not heretofore recognized, and which is without precedent.

The primary duty of the city with respect to its streets and alleys is to "keep them in a reasonably safe condition for use by travelers in the usual modes". Carson v. City of Genesee, 9 Idaho 244, 74 P. 862, 864, 108 Am.St.Rep. 127; Moreton v. St. Anthony, 9 Idaho 532, 75 P. 262; Powers v. Boise City, 22 Idaho 286, 125 P. 194; Baillie v. Wallace, 24 Idaho 706, 135 P. 850; Strickfaden v. Greencreek Highway Dist., 42 Idaho 738, 248 P. 456, 49 A.L.R. 1057.

To this primary duty, the statutes add that of keeping the streets free from nuisances. 50-1141, 52-101, 18-5901, I.C. As used in this connection, a nuisance is to be understood as that which is a nuisance per se, a nuisance as a matter of law, such

as is defined by statute. 52-101 I.C.; City of Bellevue v. Daly, 14 Idaho 545, 94 P. 1036, 15 L.R.A.,N.S., 992, 125 Am.St.Rep. 179, 14 Ann.Cas. 1136. In case of such a nuisance, the liability of the city is absolute and does not depend upon negligence. Where, however, the condition does not amount to an absolute nuisance as a matter of law, even though it be a nuisance in fact, where the substance of the underlying wrong is negligence, the liability arising out of it is not absolute, but is dependent upon negligence. The distinction was well drawn by Cardozo in McFarlane v. City of Niagara Falls, 247 N.Y. 340, 160 N.E. 391, 57 A.L.R. 1; also in Taylor v. City of Cincinnati, 143 Ohio St. 426, 55 N.E.2d 724, 155 A.L.R. 44.

The liability of the city for breach of its duty to keep the streets and alleys in safe condition for travellers depends upon negligence, and absence of contributory negligence, in all cases where the wrong does not amount to an absolute nuisance as a matter of law. This proposition is universally accepted and is adhered to by all the decisions of this court on the subject.

Although the plaintiffs allege the situation caused by the location of the tank to be a nuisance, it cannot be contended that it constituted a nuisance as a matter of law, such as would impose a liability regardless of negligence. 52-101, 18-5901, I.C.

The statutes imply authority in the city to grant permission for such use of the public way. 62-901, 40-305, and 50-1141, I.C. Abutting property owners are generally considered to have special privileges in the use of the streets and alleys adjacent to their property, Searcy v. Noll Welty Lumber Co., 295 Mo. 318, 243 S.W. 318, 23 A.L.R. 816, 4 McQuillan M.C.2d Ed. 100 et seq., and Village of Sandpoint v. Doyle, 14 Idaho 749, 95 P. 945, 17 L.R.A.,N.S., 497, and even greater subsurface rights, 4 McQuillan M.C.2d Ed. 165 et seq. Such privileges are generally recognized throughout this state, a fact of which this court will take notice. Subsurface rights were recognized by this court under charter provisions of the city of Lewiston, which in effect gave that city authority similar to that given to other cities of the state by the provisions of section 50-1141, I.C. City of Lewiston v. Isaman, 19 Idaho 653, 115 P. 494. It was there held that the sidewalk cellar doors involved, being maintained by authority of law, could not be deemed a nuisance. It is stated that 52-108, I.C., refers only to statutes. However, the principle is sound, and was applied by this court where no specific statute was involved. Olin v. Honstead, 60 Idaho 211, 91 P.2d 380. So the conclusion is unavoidable that the situation created by the installation of this tank was not a nuisance per se, nor a nuisance as defined by the statute, and that, therefore, the plaintiffs must allege negligence on the part of the city in order to impose any liability upon it.

The complaints allege that the tank was installed by the Butane company under the direction and supervision of the city engineer. It also appears from the complaints that the tank was installed pursuant to some agreement between the tenant and the American Butane Company as a means of delivery to, and for use by, the tenant of Butane gas; that the ground floor space was divided and rented to two different tenants. The lease attached provides for the rental of one of the storerooms and the basement thereunder. The lease further provides for repairs by the tenant and that the tenant shall not make or suffer alterations without the written consent of the lessor, and that "the lessors may at any reasonable time enter the premises to view the same or make improvements or repairs at their option." From these allegations, it follows that the installation was made by the occupant and the Butane company for their mutual benefit. So far as the benefit to the tenant is concerned, that will also be regarded as a benefit to the occupancy, or to the leasehold estate and, as such, an indirect benefit to the owner. This is so, even though he alleges that it was done without his knowledge or consent. The city, despite its permit and supervision by its engineer, was not an actor. It was not in the gas business and the installation was not made for its benefit. The duty of the city involved in this transaction was limited to that imposed by the statutes to see to it that the installation was made in such manner as not to interfere with the free and unobstructed use of the alley by the public in the usual modes, and to prevent the establishment of a nuisance therein. The facts alleged show that the city fully performed this duty. The alley was left open and free from obstructions and no nuisance was created. No duty devolved upon the city to protect either of the parties to the installation of the tank, nor the owner of the building, from any negligence on their part, in the manner in which the work authorized by the permit was done. 2 Sherman & Redfield, sec. 296, p. 726; Trueman v. Village of St. Maries, 21 Idaho 632, 123 P. 508; Foster v. City of Chicago, 197 Ill. 264, 64 N.E. 322; Macer v. O'Brien, 356 Ill. 486, 190 N.E. 904; 63 C.J.S. Municipal Corporation, § 859, 861b. (b) (c), 864b., 867; 62 A.L.R. 1088, 70 A.L.R. 1365; Sanders v. First Nat. Bank, 183 Okl. 112, 80 P.2d 207. The specific charge is that the tank was so placed that its service valves extended into the pit which in turn opened into the basement. It is obvious that this particular location was chosen by those who installed the tank as a matter of convenience to themselves, and possibly to save the expense of constructing another means of access to the valves in filling the tank, and a few feet more of pipe leading from the tank to the building, or of making another hole through the foundation for the service pipe. In any event, whatever their motive may have

been, the selection of the particular site, in that regard, was a matter which did not concern the city.

It is fundamental that actionable negligence is founded upon a breach of some duty owed by the party charged, as a consequence of which breach the complainant is injured. 45 C.J. 631–632, 38 Am.Jur. 642. Hence, the city, owing no duty to the owner of the building to safeguard his property against acts of negligence on the part of his tenant, or third parties dealing with his tenant, there could be no breach of duty alleged by the owner which would impose a liability upon the city.

It is stated in the majority opinion that the city's liability in such a case is the same as that of a private owner with reference to damages inflicted upon persons in or near his premises. This is contrary to the holding in Trueman v. St. Maries, supra, where it is held that the issuing of such permit is a governmental function. But, assume the proposition is sound. If A owns land with a common boundary to that of B, and has a building adjacent to the line, alongside of which on his side of the line B maintains a driveway; and if A's tenant, without A's knowledge or permission, desiring to use Butane gas in the building, either directly or through the gas company, obtains the consent of B to install a tank for such use on B's side of the line; and if we further assume that B gives such consent, provided it is so installed that his driveway is not interfered with, and he is personally present to see to it that it is so installed; and there is negligence on the part of those who do the work, say an opening surrounding the supply pipe into the building is permitted to remain unclosed; and if we further assume that an employee of the gas company thereafter spills gas in filling the tank, and the gas finds its way into the building and is there exploded; under such circumstances can it possibly be contended that B would be liable to A for the damage to his building? The question answers itself. B owed no duty to A to protect his property against the negligence of either his tenant, the gas company, or anyone employed by them, merely because he gave his consent to their use of his property. The rule apparently invoked by the majority is that, every person shall so use and enjoy his own property as not to interfere with the equal right of others to use and enjoy their property, and so as not to impinge the rights of the public. But a reading of the cases cited clearly indicates that this rule has no application here. In this case the city did not "so use" its alley. The use and enjoyment was by the tenant and the gas company. The principle referred to was correctly applied by this court in Bellevue v. Daly, supra; Strong v. Brown, 26 Idaho 1, 140 P. 773, 52 L.R.A.,N.S., 140, Ann.Cas.1916E, 482; Gould v. Reed, 34 Idaho 618, 203 P. 284; and Coulsen v. Aberdeen-Springfield Canal Co., 47 Idaho 619, 277 P. 542. These cases also demonstrate that the rule does not apply here for the reason stated.

Moreover, this court has always recognized that, even in cases involving a breach of primary and mandatory duty of the city to keep its streets and alleys open and free from obstructions, contributory negligence is a defense. Giffen v. Lewiston, 6 Idaho 231, 55 P. 545; Carson v. City of Genesee, 9 Idaho 244, 74 P. 862, 108 Am.St.Rep. 127; Smith v. City of Rexburg, 24 Idaho 176, 132 P. 1153, Ann.Cas.1915B, 276; Muir v. Pocatello, 36 Idaho 532, 212 P. 345; Butland v. City of Caldwell, 51 Idaho 483, 6 P.2d 493. So that even in a case where the city is negligent, if the plaintiff is guilty of negligence which proximately contributes to the injury, he cannot recover. How then can it be, if there was no negligence on the part of the city, and such negligence as is pleaded is negligence on the part of the tenant and a third person, that the city can be held liable? It is apparent too from the facts pleaded that the plaintiff was guilty of negligence. In his lease he reserved the right to inspect the premises, and certainly he owed himself a duty in that regard. The complaint alleges that the city's permit was issued December 3, 1945, and that the explosion occurred November 15, 1947. Assuming that the installation was made shortly after the permit was issued, the plaintiff failed for a period of almost two years to inform himself of the condition created by the installation of the tank. To permit him to recover in this case would be to permit him to recoup a loss caused by his own neglect.

A comparison may properly be drawn from the rule generally applied in most jurisdictions to the effect that, where the abutting property owner makes a special use of the adjacent street, sidewalk, or alley, he is liable over to the city for negligence on his part either in the installation of fixtures for such use, or in the maintenance thereof. This rule is based upon the fact that the use of the public way is for the benefit of the owner or his tenant, and in return for that benefit the law imposes the obligation to so install and operate such use as not to interfere with the paramount public use of the way. Out of this arises the duty of the abutting owner, or his tenant, and his liability to indemnify the city. 7 McQuillan 65–72; 63 C.J.S., Municipal Corporations, § 861, p. 223–228; Salt Lake City v. Schuback, 108 Utah 266, 159 P.2d 149, 160 A.L.R. 809. In this Utah case, where both the landlord and the tenant were held liable, it was said to be the duty of the landlord to make inspection and keep the trap-door in repair. The court also cites three Washington cases and quotes from Spokane v. Crane Company, 98 Wash. 49, 167 P. 63–64, as follows: "But the person who actually created or maintained for his own use the dangerous condition is, as between the city and himself, still primarily liable on elementary principles, and regardless of any statute or charter provision so declaring, simply because the dangerous condition was the result of his own personal negligence. As

between him and the city, his was the active negligence, while that of the city was merely passive. These considerations make it plain that there is no differentiating significance to be found in the fact that the active negligence in this case was that of the tenant, who had complete possession and control of the premises, and not that of the owner." It is to be remembered that this was a case involving an injury to a pedestrian, lawfully upon the sidewalk, and not an injury, such as here, to a party to whom the city owed no such duty. On this question of the obligation of the owner see Mitchell v. Thomas, 91 Mont. 370, 8 P.2d 639, 641. There the owner was sued by the party injured and defended upon the ground that the premises were in control of the lessee. The court held that "a tenant in possession is, for all practical purposes, the owner of the property," and found the owner liable. This court has recognized the duty of one making special use of a public street to safeguard the public in its use thereof. Horn v. Boise City Canal Company, 7 Idaho 640, 65 P. 145. If the abutting owner is primarily responsible for injuries caused through his negligence in connection with the use of a public way, established and maintained by himself or his tenant, for the benefit of his property, how can he shift that primary obligation to the city, where the city is not in any way benefitted, nor a party to the installation?

Another comparison can be drawn between the position of the city in this case and those cases wherein gas companies, engaged in distributing gas to the public for profit, have been sued for negligence resulting in injury to customers or third persons. Here, of course, the gas company, being engaged in a private business for profit, has a primary duty to exercise due care for the protection of its customers and the public. But even in these cases it is universally held that (1) the gas company is not liable as an insurer; (2) its negligence must be established; (3) while it has a duty to make reasonable inspection, it must have some knowledge or notice of the defect or danger; (4) it is not liable for leaks in the pipes, fittings or appliances of its customers over which it has no control; (5) contributory negligence is a defense; and (6) it is not liable for the negligence of third persons. 25 A.L.R. 262, Reid v. Westchester Lighting Co., 236 N.Y. 322, 140 N.E. 712, 29 A.L.R. 1250; Prestonbury Superior Oil Gas Co. v. Vance, 215 Ky. 77, 224 S.W. 405, 47 A.L.R. 488; Gerdes v. Pacific Gas & Electric Co., 219 Cal. 459, 27 P.2d 365, 90 A.L.R. 1082; Scarborough v. Central Arizona Light & Power Co., 58 Ariz. 51, 117 P.2d 487, 138 A.L.R. 870. It is at once apparent that the rule applied here makes the city liable where a private party (even though it be a party to, and a beneficiary of, the transaction) would not be liable. Further, it has been held that a gas company is not liable to the owner for injury to his property caused by the negligence of a tenant.

Smith v. Pawtucket Gas Co., 24 R.I. 292, 52 A. 1078, 96 Am.St.Rep. 713. Creel v. Charleston Natural Gas Co., 51 W.Va. 129, 41 S.E. 174, 90 Am.St.Rep. 772. This seems a sound rule. Why shouldn't the owner be bound by the act of his tenant as regards the liability asserted against the city? He entrusted his property to the possession, control and care of the tenant, for a profit, reserving in his lease the right to inspect at reasonable times for the protection of his reversionary estate. The negligence of the tenant should not be charged to the city, which had no interest, whatever, in the transaction.

I have examined all of the authorities cited by the majority. None supports the conclusion reached. Most of them concern injuries to persons using the public streets. Such cases, involving, as they do, the basic duty of the city to keep the streets safe, obviously are not in point. In each of the other cases cited, the liability imposed upon the defendant, whether a private owner or a city, is based upon a breach of some well-recognized duty owed to the injured party. In no case has a liability been imposed where the facts are similar to these. The nearest in point of facts is Nixon v. Chicago, a case where the abutting owner's building was damaged by removal of lateral support by a private party tunnelling in an alley, under a permit issued by the city. There are two distinctions: first, the duty of care in removing lateral support was involved; second,

neither the owner nor his tenant was a party to the tunnelling, and it was not done for the benefit of his property.

The following authorities support respondent's position: Wheeler v. City of Plymouth, 116 Ind. 158, 18 N.E. 532, 9 Am. St.Rep. 837; Ehret v. Village of Scarsdale, 269 N.Y. 198, 199 N.E. 56; Macer v. O'Brien, 356 Ill. 486, 190 N.E. 904; Foster v. City of Chicago, 197 Ill. 264, 64 N.E. 322; Trueman v. St. Maries, supra; 2 Sherman & Redfield, Negligence, 726.

What has been said on the basic duty and responsibility of the city as to the claim of the abutting owner, applies with equal force to the claim of the plaintiff Metzer. The city owed her no duty which was breached by it. She was an employee of the tenant. The primary duty involved was that of her employer to furnish her a safe place to work. Coupled with that was a duty of the Butane company to safeguard its customers, their employees, and invitees, and the public, against dangers arising out of its negligence in supplying the gas. Foster v. City of Chicago, 356 Ill. 486, 64 N.E. 322.

In view of the lapse of time between the installation and the occurrence of the explosion, during which it appears no explosive accumulation of gas occurred in the basement, I am inclined to think that the damage was not necessarily foreseeable. But more important here, this fact amply shows, at least as far as the city is concerned, that the manner of installation

was not the proximate cause of the explosion. Otherwise, the frequent filling of the tank during the intervening period, together with the heater fire and electric motors alleged to have been operating in the basement, would have caused an earlier explosion. It appears that there was a distinct intervening act of negligence on the part of the gas company's employee in filling the tank on November 15th.

The judgment should be affirmed.

I am authorized to say that Justice KEETON concurs in this dissenting opinion.

### On Rehearing

GIVENS, Justice.

HOLDEN, C. J., and GIVENS and PORTER, JJ., adhere to the majority opinion and their views heretofore expressed.

KEETON, Justice (dissenting).

Subsequent to the filing of the majority opinion in this case a rehearing was granted, additional briefs were filed and the matter was re-argued on March 21st.

The importance of this case, and the unlimited implications of the majority opinion require me to further amplify my views.

I have again examined the law applicable to the facts alleged and am still unable to determine on what theory the City of Nampa can be held liable.

As an accommodation to Splinter's tenant, permission was granted by the City to install a butane tank in the alley adjacent to plaintiff's property, which was also an accommodation to the land owner and a benefit or improvement to his property. The only interest that the City would or could have in the proper installation of the tank would be to determine that its installation would not obstruct the use of the alley by the public in the ordinary and customary way, and not create a nuisance per se. The installation of the tank was for the use and benefit of the plaintiff's tenant and to improve plaintiff's property. The fact that the land owner, or the tenant, or both, maintained a coal chute in the vicinity of the tank was a matter over which the City had no control whatsoever, and to hold that the City was liable for a subsequent explosion caused by the negligence of the gas company while filling the tank, and in spilling the gas, is in substance permitting the land owner to recover for his own negligence.

The common law rule that one should not use his land so as to injure the property of another does not apply here.

The rule announced in the majority opinion would be, in effect, that the plaintiff Splinter should not be permitted by the City to use City property, as well as his own property, in a manner to cause injury to himself; and if the City permits him to use his own or City property, or both, in a manner to cause injury to himself, the

City in not objecting to or prohibiting his so doing, becomes liable for the consequences of plaintiff's own act.

The City did not own the tank, did not order it installed, nor installed in any particular place. It permitted the installation for the benefit of plaintiff's property, and if the land owner or his tenant saw fit to install the tank at a location and in a manner that might, due to unforeseeable contingencies, cause damage to the tenant or to the land owner, or both, the City, on no theory that I am able to find, could be considered negligent or liable for the consequences of such act.

The majority opinion in this case would, in effect, insure the land owner against his own act of negligence, and the negligence of others over which the City had no control. It might be inquired, should the City of Nampa be held liable for the unforeseeable consequence and result of the negligence of the land owner himself, or his tenant, or agent, or third party not employed by the City?

It would be more logical to conclude that the plaintiff Splinter would be liable to the City of Nampa for permitting an explosion which caused damage to the City's alley or street.

Much was said in the argument and in the briefs on the question of whether or not the issuing of a permit for the installation of the tank and supervision by the City Engineer were governmental or proprietary functions. In my opinion, these are governmental functions, and this Court has many times so held. I do not believe there would be a liability on an individual under the same circumstances, and even though it were a proprietary function of the City, still the City would not be liable.

While the City has an affirmative statutory duty to pedestrians and persons using the streets to keep them reasonably safe and open for use in the usual and customary manner, and may be held liable for a negligent performance of this duty, no precedent that I have been able to find holds that the City is liable for the performance of a purely governmental function unless made so by statute.

The installation of the tank was in itself not a nuisance, nor did it in anywise obstruct the free and ordinary use of the alley; nor does the City have complete and exclusive control and dominion over the streets and alleys. Every property owner abutting the street is entitled to a use not common to other citizens. Thus he is entitled to ingress and egress from the premises and has the right, with other abutting owners, to use underground sewers, gas works and electrical connections, and in this sense has a property right in the street abutting his property, and this Court has so held. Village of Sandpoint v. Doyle, 14 Idaho 749, 95 P. 945, 17 L.R.A.,N.S., 497.

The rights of a property owner abutting a street are, of course, subject to rea-

sonable regulations in the exercise of police power, and the exercise of police power in making such rules and regulations is a governmental and not a proprietary function. Fosters, Inc., v. Boise City, 63 Idaho 201, 118 P.2d 721; Strickfaden v. Greencreek Highway District, 42 Idaho 738, 248 P. 456, 49 A.L.R. 1057; Trueman v. Village of St. Maries, 21 Idaho 632, 123 P. 508.

The City of Nampa is not the owner of the property where the explosion occurred, and hence had no control over it. The installation of the butane tank or the maintenance of the coal chute, could under no theory be said to be advantageous to the City.

The explosion complained of occurred on plaintiff's property and within his building. The tank itself did not explode. The coal chute and the opening into the basement where the explosion occurred were placed there by the owner of the property and were in existence prior to the time the butane tank was installed.

It was not the City or any of its agents that put in motion the chain of events which caused the injury complained of. The spilling of the gas by the butane company's agent was not an act of the City. No act of the City in the exercise of a governmental or proprietary function in anywise caused the explosion or the damage complained of. Nor am I able to find any act or thing done by the City complained of in the complaint that even remotely caused the explosion.

There are but few similar cases passing on the question of alleged liability complained of here, and those that have passed on the question have uniformly held the city not liable. In the case of Beeson v. City of Los Angeles, 115 Cal.App. 122, 300 P. 993, a suit was filed by the mother of a child who had drowned in an unguarded storm sewer. The plaintiff claimed that the City had left the sewer open and in a dangerous condition. In denying the claim, the Supreme Court of California held that streets were not playgrounds for children, and said 300 P. at page 997: "In all of the cases thus far decided the injured party was using the street in which he was injured, or the property which caused the injury, in the usual and ordinary manner in which it was contemplated that the street or property would be used. We are of the opinion that in passing and adopting section two of the act approved June 13, 1923, the Legislature intended to limit the liability of the city for damages resulting from defective streets, works, or property to damages suffered in the ordinary, usual, and customary use thereof. * * * 'As a general rule, highways and bridges are constructed for ordinary use, in an ordinary manner, and not for an unusual or extraordinary use, either by crossing at great speed or by the passing of a very large and unusual weight. A township is not bound to do more than to so construct

its bridges as to protect the public against injury by a reasonable, proper, and probable use thereof, in view of the surrounding circumstances, such as the extent, kind, and nature of the travel and business over them.' "

In the case of Foster v. Capital Gas & Electric Co., 125 Kan. 574, 265 P. 81, an action was brought for damages for the destruction of a house caused by the explosion of gas alleged to have been caused through the negligence in the laying of sewer and gas pipes in the city streets, permission having been granted the gas company for that purpose. In holding that the city was not liable, although the gas company was, the Supreme Court of Kansas said 265 P. at page 83: "In our opinion the city is not liable because the injury was too remote and because the city was engaged in a governmental function. The general rule is that municipal corporations are not liable in damages for negligence of their officers in the discharge of their duties when engaged in governmental functions, unless the liability is expressly imposed by law. * * * In the instant case, it is argued that the construction of a sewer is a ministerial and not a governmental function, and that the city is liable for any tort committed in the performance of a ministerial function. We think not. The construction and maintenance of a sewer, in our opinion, is governmental as distinguished from ministerial or proprietary. We believe it the better and more reasonable rule to hold that (except in injuries arising from defects in streets or highways) the municipality is not liable when engaged in performing governmental functions."

In the case of Von Almen's Administrator v. City of Louisville, 180 Ky. 441, 202 S.W. 880, an action was brought to recover damages for the death of a child that had drowned in a pond which was formed due to obstructions maintained by the city on a public street. The child at the time was playing near the pond and fell in. The Court held that the city was not liable since the accident did not happen on, or result from its ordinary use of the street, the ordinary use of the street at the point in question not being dangerous, and said 202 S.W. at page 881: "We do not think the facts justify a lengthy discussion of the alleged liability of the city for the accident upon the ground of negligence in the maintenance of the street, since the accident did not happen upon, or result from the use of, the street, the boys having purposely left the street in obedience to their childish instincts for amusement; and, although the place of the accident was barely off the street right of way and within less than four feet of the sidewalk, the uncontradicted proof shows that the wall, the pond, and the culvert with its sewer connection, considered severally or together, were not constructed or maintained in such a manner as to render any reasonable use of the street, by children or adults, danger-

ous; hence no danger could have been anticipated even to children playing in the street; and, as stated, this accident did not happen to decedent from any such use of the street, but from playing in the pond near the street where it was accessible from the street, just as it would have been at any other point within sight of the street, but no more so."

As applied to the case at bar, the City of Nampa did not maintain the alley in a dangerous condition, and the manner and method in which it was maintained in nowise caused or contributed to the damage and injury complained of.

The injury and damage complained of in the case at bar occurred because of intervening and unrelated causes and the City's permitting the plaintiff or his tenant to install a butane tank for the use of the plaintiff's property was not the proximate cause of the explosion. The proximate and intervening agency that caused the damage in this case was unrelated to and unconnected with any act permitted or done by the City. The spilling of the butane gas and its entering through an opening maintained by the plaintiff on his own property was the direct and proximate cause. If the City by any theory could be held liable in this case it would be something that must be reasonably foreseen and provided against, and if there was any duty to provide against the contingency which happened in this case, it would be a duty to be performed by the land owner.

If the coal chute had not existed or had been cared for by the plaintiff Splinter so that the gas could not run down it, the injury complained of here would not have occurred.

There is no claim that the tank itself was defective or that it was improperly installed or that the City maintained the tank or the alley in a way that caused the gas to spill or enter the building. Nothing happened until the gas was spilled by an employee of the company, which was apparently ignited by a spark in the basement of the building destroyed. This was not an act of the City.

Further, the last responsible agency that put in force the chain of events that caused the damage and injury was a servant of the gas company and not a City employee or agent.

The further prolonging of this dissent would serve no useful purpose. Summarizing, it is my opinion that the City is not liable for the injury complained of for the following reasons:

First, the permit to install the tank as done, and as supervised by the engineer, was a governmental function.

Second, there would be no liability and no legal claim for damages even though the acts charged to the City were proprietary functions.

Third, the damage and injury complained of was the result of negligence of a third

308

party and the negligence and carelessness of the plaintiff, his tenant and agents.

Fourth, no acts of the City contributed to or were the proximate cause of the damage and injury complained of.

Fifth, one should not be allowed to recover for a condition which he himself created, and which causes damage to himself.

For reasons stated in Justice TAYLOR'S dissent, I am also of the opinion that the plaintiff Metzer has no claim against the City.

The judgment should be affirmed.

Justice TAYLOR concurs in this dissent.